26008. TANKSLEY v. FOSTER et al.

HAWES, Justice. This is a proceeding in the nature of quo warranto, and a petition for injunction to test the right of the four defendants named in the complaint to hold office and exercise power and authority as members of the Hospital Authority for

Union County. Pursuant to the authority granted by the Act approved March 27, 1941 (Ga. L. 1941, pp. 241-250, as amended), the City of Blairsville and Union County, on December 28, 1956, by a joint resolution created the Hospital Authority for Union County and the City of Blairsville, said Authority to be composed of five members. On October 9, 1969, E. S. Dockery, as Ordinary of Union County, and Raymond Nix, as Mayor of the City of Blairsville, Georgia, affixed their signatures to an instrument purporting to be a joint resolution of the ordinary and of the mayor increasing membership on the hospital authority from five to nine members, and purporting to appoint to the posts thus created four named individuals, who are the defendants in this proceeding. Thereafter, on January 15, 1970, Nix executed an instrument reciting, among other things, the aforesaid action of himself and of the ordinary and reciting that, "Whereas, the said ordinary and the said mayor were without the right and power to change the structure of the hospital authority without the concurring action of the city council of the City of Blairsville, the said action of the ordinary and the mayor on October 9, 1969, is hereby declared to be null and void."

On January 16, 1970, the mayor and several other gentlemen, including Mr. Jack G. Tarpley, a city councilman, met in the office of one of them for the purpose of auditing the books of the local Masonic Lodge. During this meeting, a discussion arose as to the advisability of creating additional memberships on the hospital authority and "Mr. Tarpley sat down and typed up what [the mayor] thought was a resolution . . . , and he called the council members to the meeting . . . and they signed it." The mayor testified that he did not look at the instrument that Mr. Tarpley typed and did not see it until several days thereafter. This instrument, introduced as plaintiff's Exhibit No. 3, reads as follows: "City of Blairsville Union County, Georgia. We, the undersigned, members of the City Council of the City of Blairsville, hereby ratify and confirm the action of Mayor Raymond C. Nix taken on the 9th day of October, 1969, in concurring with Ordinary E. S. Dockery in the appointment to the Union County Hospital Authority of C. E. Foster, Lillian

Lance, Don Phillips and Dr. Herschel C. Aldrich. This 16th day of January, 1970. /s/ Jack G. Tarpley /s/ R. C. Colwell /s/ Robert Head, Jr." Following the execution of the above quoted instrument, the mayor undertook to execute an instrument dated January 16, 1970, rescinding his action of January 15, 1970, and reinstating and reaffirming his action taken on the 9th day of October, 1969, enlarging the hospital authority and appointing four additional members thereon.

1. Section 3 of the Hospital Authorities Act (Ga. L. 1941, pp. 241, 242, as amended), provides that the board shall consist of not less than five nor more than nine trustees to be appointed by the "governing body of such county or municipal corporation." That section further provides that, "any two or more cities or counties, towns or municipalities by a like resolution by their respective governing bodies, may authorize the exercise of the powers herein provided for by an authority with respect to which the area of operation shall be confined to such participating units." Section 2 of that Act defines "governing body" as meaning, "the elected or duly appointed officials constituting the governing body of cities, towns, municipalities or counties." The Hospital Authorities Law enacted by the legislature as a part of the Georgia Health Code (Ga. L. 1964, pp. 499-664) provides that the members of hospital authorities shall be appointed by "the governing body of the county or municipal corporation of the area of operation" and that such Authority shall not transact any business nor exercise any powers until "the governing body" of the area of operation shall by proper resolution declare that there is a need for such an Authority to function. Ga. L. 1964, pp. 499, 599. Pretermitting any question as to whether the provisions of *Code* § 88-1803 (enacted as a new Code section by the Hospital Authorities Law) authorizing the amendment of resolutions of governing bodies creating hospital authorities was intended to apply to hospital authorities created by resolutions adopted under the former law, it is clear that the power to amend such a resolution is granted, if at all, only to "the governing bodies of participating units acting together." Ga. L. 1964, pp. 499-601.

2. By the Act approved February 5, 1952 (Ga. L. 1952, pp. 2081,

2149) the legislature created a new charter for the City of Blairsville. By the terms of Sec. 4 of that Act "the municipal government of the City of Blairsville shall consist of and be vested in a mayor and five councilmen." By Sec. 5 the mayor is the chief executive officer of the city and it is "his duty to preside at all meetings of the city council, [and] to see that all meetings are conducted in a parliamentary manner." Sec. 7 charges the mayor and councilmen with the duty of providing by ordinance for regular monthly meetings of the council and grants to them authority to hold such special called meetings as the business of the city may require, "which special or called meetings, shall be called by the mayor in his discretion, to be convened as provided by the city ordinances." With respect to any business coming before the mayor and council "a majority of the *votes* cast shall determine [the] question before them; provided, that every question so determined or ordinance passed shall receive no less than three votes." Sec. 21, Ga. L. 1952, p. 2097. (Emphasis supplied).

According to the undisputed evidence adduced upon the trial of this case, no official meeting of the mayor and councilmen of the City of Blairsville at which a resolution to expand the hospital authority was voted upon was had. However, if there was a meeting, the undisputed evidence shows that it was called, not by the mayor as required by the charter, but by one of the councilmen, Mr. Tarpley. He notified two of the councilmen by telephone, and no notice of the meeting was ever served on the other members of the council. The two thus called "came in and looked at the . . . examined the document and they signed it." The mayor did not see the document signed by the others, but he presumed it was a resolution. He did not preside at any meeting, and no vote was taken on the issue. The instrument executed by Mr. Tarpley and the other two members of the council who were called by him does not in any sense purport to be a resolution of the council itself, but is merely an instrument drawn up and signed by three individual "members of the city council of the City of Blairsville." The three individuals, even though they were incidentally members of the City Council of the City of Blairsville, and constituted a majority of those

members of the city council then in office, could not, acting alone and merely in their individual capacities, perform the functions of the governing body of the City of Blairsville. *Hunter v. City of Atlanta,* 212 Ga. 179, 180 (91 SE2d 338).

3. We are aware of the cases decided by this court in the past to the effect that no particular form of enactment is necessary to constitute a valid municipal ordinance and that it is not essential to the validity of a municipal ordinance that it be spread upon the minutes of the city council. We do think, however, that the meager requirements of the charter of the City of Blairsville with respect to the manner of calling special meetings of council and the holding of such meetings should be observed as a prerequisite to the validity of any action taken.

4. One other factor appearing from the undisputed evidence in this case supports the conclusion here reached. The instrument signed by the three members of the City Council of the City of Blairsville purported to ratify and confirm action of the mayor taken on October 9, 1969. The day before that instrument was signed the mayor had executed an instrument by which he rescinded and repudiated and declared his action of October 9th to have been a nullity. There was, therefore, nothing upon which the attempted ratification on the 16th day of January, 1970, could operate, and even if it could be said that the instrument signed by the three members of the City Council of the City of Blairsville on that date was to all intents and purposes an ordinance, or resolution, of the mayor and council of the City of Blairsville, it could not have any force and effect as a ratification of an action that had been rescinded.

5. It follows that the judge of the superior court erred in finding that there was a legal and valid resolution expanding the membership of the hospital authority and that it had been properly enacted by the Mayor and Council of the City of Blairsville; in holding that the four named defendants were legal and qualified members of the Union County Hospital Authority and entitled to serve on the board, and in denying plaintiff's demand for an injunction restraining them from so serving and acting.

*Judgment reversed. All the Justices concur.*

ARGUED SEPTEMBER 15, 1970—DECIDED JANUARY 8, 1971.

*Robinson, Buice, Harben & Strickland, B. Carl Buice,* for appellant.

*Jack G. Tarpley, Herman J. Spence, Bobby C. Milam,* for appellees.