A06A1993. LEAKE et al. v. MURPHY et al.
(644 SE2d 328)

BERNES, Judge.

In this second appeal of this negligence action, the plaintiffs, Alan and Sandy Leake, individually and as parents and natural guardians of their child Anna, appeal from the trial court's grant of summary judgment in favor of the defendants, the Gwinnett County Board of Education and the Gwinnett County School Superintendent. The trial court ruled that the defendants had conclusively proven that a school safety plan was in place at Mountain Park Elementary School at the time that Anna was injured on school grounds, and thus were entitled to official immunity, barring the plaintiffs' negligence claims. For the reasons set forth below, we affirm.

Summary judgment is proper if the pleadings and evidence show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant." (Citations omitted.) *McCaskill v. Carillo*, 263 Ga. App. 890 (589 SE2d 582) (2003).

So viewed, the record reflects that on February 21, 2002, a psychologically disturbed individual obtained unauthorized entry

into Mountain Park Elementary School and attacked Anna, a ten-year-old student, with a hammer.[1] The plaintiffs subsequently commenced this damages action against the defendant school officials, alleging, among other things, that the defendants were negligent in their failure to develop a school safety plan pursuant to OCGA § 20-2-1185. The defendants filed a motion to dismiss, which the trial court granted, ruling that the defendants were protected by official immunity from any claim arising from their failure to develop a school safety plan. The plaintiffs appealed that ruling, which was the subject of our decision in *Leake v. Murphy*, 274 Ga. App. 219 (617 SE2d 575) (2005) ("*Leake I*").

In *Leake I*, we reversed the trial court's dismissal of the lawsuit against the defendants, finding that they had a ministerial duty under OCGA § 20-2-1185 to prepare a school safety plan for Mountain Park, and that no record evidence had been presented at that procedural stage to show that the duty had been fulfilled prior to the February 2002 attack. Id. at 224 (1). We further ruled, however, that "if a motion for summary judgment is filed and evidence of a plan that predates the attack on Anna and addresses security issues is presented, the defendants would be entitled to official immunity [under Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d)]." Id.

Upon remand, the defendants moved for summary judgment and presented evidence showing that a school safety plan had been prepared for Mountain Park prior to the February 2002 attack. In turn, the plaintiffs moved for partial summary judgment, contending that the school safety plan was invalid based on the manner in which it had been developed and approved. The plaintiffs further argued that the defendants had negligently violated a ministerial duty by having the safety plan prepared without the involvement of parents, students, and the school staff of Mountain Park. Based upon our prior ruling in *Leake I*, and in light of the evidence of a safety plan submitted by the defendants, the trial court granted summary judgment in favor of the defendants and denied partial summary judgment to the plaintiffs.

1. In challenging the trial court's summary judgment rulings, the plaintiffs contend that the trial court erred in holding that a valid school safety plan had been put into place at Mountain Park prior to the February 2002 attack. We disagree.

OCGA § 20-2-1185 (a) requires that

---

[1] For a detailed recitation of the unfortunate and troubling facts of this case, see our opinion in *Leake v. Murphy*, 274 Ga. App. 219, 219-221 (617 SE2d 575) (2005).

[e]very public school shall prepare a school safety plan to help curb the growing incidence of violence in schools, to respond effectively to such incidents, and to provide a safe learning environment for Georgia's children, teachers, and other school personnel. Such plan shall also address preparedness for natural disasters, hazardous materials or radiological accidents, acts of violence, and acts of terrorism. School safety plans of public schools shall be prepared with input from students enrolled in that school, parents or legal guardians of such students, teachers in that school, community leaders, other school employees and school district employees, and local law enforcement, fire service, public safety, and emergency management agencies. . . . Such plans shall be reviewed and, if necessary, updated annually. Such plans of public schools shall be submitted to the local emergency management agency.

To show that they had complied with OCGA § 20-2-1185 (a) prior to the February 2002 attack, the defendants presented safety plan records and the affidavits of multiple Gwinnett County school officials.[2] This record evidence reflects that a Cross Functional Action Team ("XFAT") was formed in 1999 to analyze and prepare a safety plan for every school in the Gwinnett County School District, including Mountain Park. As part of its process, the XFAT team reviewed and collaborated with central office staff, local school principals, parents, school resource officers, community emergency response representatives, and consultants specializing in the area of crisis management. The defendants were informed of the progress and work of the XFAT team at cabinet meetings and board meetings.

During that process, every school in the district, including Mountain Park, had their school safety plans reviewed, updated, and submitted to Georgia Emergency Management Agency ("GEMA") for review and approval by the year 2001. At the regularly scheduled board meeting on November 8, 2001, the defendants were presented with an announcement from GEMA that each of the individual school safety plans was approved as in compliance with OCGA § 20-2-1185. The certificate of compliance issued by GEMA specifically for Mountain Park was included in the record.

---

[2] The affidavits included those of J. Alvin Wilbanks, Superintendent of the Gwinnett County School District; Emmett Lawson, former Associate Superintendent for Educational Leadership; Debbie Allred, Principal of Mountain Park Elementary School; Alexis Kirijan, Special Assistant Principal for the Gwinnett County Board of Education; Steve Harris, School Safety Unit Manager for the Georgia Emergency Management Agency; and Frank Daniell, Gwinnett County's Emergency Management Coordinator.

The record further shows that several crisis management notebooks consisting of the comprehensive, standardized school safety plans were provided to Mountain Park. Mountain Park also received safety plan training as part of the 1999 process, and continued to conduct updates and routine emergency drills thereafter. Significantly, the safety plan and training materials consisted of emergency operations planning, including access controls and handling strangers on campus. According to the affidavit of Principal Debbie Allred, Mountain Park had this safety plan in place at the start of the 2001-2002 school year.

Based upon this combined evidence presented by the defendants, the trial court was authorized to find that the required school safety plan had been prepared and put into place at Mountain Park before the February 2002 attack. Nonetheless, the plaintiffs contend that the school safety plan was invalid because there is no evidence that the defendants formally adopted the school safety plan for Mountain Park in accordance with OCGA § 20-2-57 and school district administrative policies, and since the individual school plan was prepared by third parties and approved by GEMA rather than by the defendants themselves.

We do not agree. While the record does not contain minutes from a board meeting establishing that the defendants formally voted upon and approved the school safety plan specifically for Mountain Park, the defendants were not required to do so in order to comply with OCGA § 20-2-1185 (a). Rather, OCGA § 20-2-1185 (a) simply requires that a school safety plan be prepared and put into place at each school and places the responsibility upon the county superintendent and county school board to ensure that this occurs. The statute does not mandate that the county superintendent and county school board individually approve the safety plans for each school, nor does it otherwise prescribe how these school officials should go about ensuring that such plans are developed and implemented. In other words, what is important under OCGA § 20-2-1185 (a) is that the county superintendent and county school board make sure that safety plans in fact be developed and put into place at each individual school, not *how* they go about ensuring that this is done.

OCGA § 20-2-57 (a) and the board's administrative policies cited by the plaintiffs do not change this conclusion. While OCGA § 20-2-57 (a) provides that "[t]he votes of a majority of the members present shall be necessary for the transaction of any business or discharge of any duties of the local board of education, provided there is a quorum present," the statute does not automatically void all actions taken without a formal vote and a quorum, as the defendants appear to suggest. See also OCGA § 1-3-1 (c). Instead, OCGA § 20-2-57 (a) further provides that "any action" taken in noncompliance of its

procedural provisions "*may* be rescinded by a majority of the board members" at a later time. (Emphasis supplied.)

Here, it is clear that the defendants took "action" with respect to the development and implementation of the individual school plans, even if there was no formal vote approving those plans. For example, the defendants formed the XFAT team to prepare the safety plans; remained informed of the team's progress and work at cabinet meetings and board meetings; were presented with an announcement from GEMA that the individual school safety plans were statutorily compliant at its November 8, 2001 board meeting; and voted to approve the district's safety and security budget for the 2001-2002 school year. The board has not elected to rescind these actions taken with respect to the school plans.[3] Accordingly, we conclude that, contrary to the plaintiffs' contention, the school safety plans were not developed and implemented in a manner unauthorized by OCGA § 20-2-57 (a). And, the same conclusion is warranted with respect to the board's administrative policies, which essentially correspond to the statutory provisions of OCGA § 20-2-57 (a).

We likewise reject the plaintiffs' contention that the school plan for Mountain Park was invalid because the defendants improperly delegated preparation of the school safety plans to GEMA and other third parties. OCGA § 20-2-1185 (a) authorizes obtaining input from certain statutorily designated third parties in developing the safety plans. OCGA § 20-2-1185 (d) further requires GEMA to provide training and technical assistance to public schools, including but not limited to safe school planning and providing model school safety plans. Hence, the defendants' reliance upon GEMA and other third parties in the preparation of the plans was sanctioned by statute.

For these reasons, we conclude that the defendants conclusively demonstrated that a valid safety plan had been prepared and put into place at Mountain Park prior to the February 2002 attack. The trial court therefore did not err in holding that the defendants had satisfied, as a matter of law, their ministerial duty under OCGA § 20-2-1185 (a) to have a school safety plan prepared for Mountain Park during the relevant time period.

2. The plaintiffs also contend that the trial court should have held that the defendants negligently violated a separate ministerial duty

---

[3] The plaintiffs' reliance upon *H. G. Brown Family Ltd. Partnership v. City of Villa Rica,* 278 Ga. 819 (607 SE2d 883) (2005); *Chatham Assn. of Educators &c. v. Bd. of Public Ed. for the City of Savannah &c.,* 231 Ga. 806 (204 SE2d 138) (1974); *Tanksley v. Foster,* 227 Ga. 158 (179 SE2d 257) (1971); *Smith v. Ouzts,* 214 Ga. 144 (103 SE2d 567) (1958); and *State Bd. of Ed. v. Elbert County Bd. of Ed.,* 112 Ga. App. 840 (146 SE2d 344) (1965) is unavailing. In those cases, the governing authorities sought to rescind actions that were not taken in compliance with procedural rules for official action. Here, as noted, the school officials have never sought to rescind the school safety plans.

under OCGA § 20-2-1185 (a) to have the safety plan prepared with the involvement of parents, students, and the school staff of Mountain Park. As previously noted, OCGA § 20-2-1185 (a) provides in part that "[s]chool safety plans of public schools shall be prepared with input from students enrolled in that school, parents or legal guardians of such students, [and] teachers in that school," among other persons. Emphasizing the use of the word "shall," plaintiffs argue that the statutory provision created a ministerial rather than a discretionary duty to seek input from these specific parties in developing the school safety plan for an individual school.

We disagree. Georgia courts have articulated the distinction between ministerial and discretionary acts in the following manner:

> A ministerial act is commonly one that is simplé, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

(Citations omitted.) *Brock v. Sumter County School Bd.*, 246 Ga. App. 815, 819 (2) (542 SE2d 547) (2000).

With these distinctions in mind, we conclude that the statutory provision at issue "is too general in nature to create a ministerial, non-discretionary duty" in the defendants. *Hemak v. Houston County School Dist.*, 220 Ga. App. 110, 114 (469 SE2d 679) (1996) (school board regulation too general to create ministerial duty). The provision simply lists several general categories of persons from whom to seek input, but leaves multiple questions to the discretion of school officials, including how many persons to consult; which particular students, parents, and teachers to consult; what types of input to seek from those persons; the manner of obtaining the input; and how to evaluate or use the input ultimately gathered. And, answering these questions would require "the exercise of personal deliberation and judgment" rather than "merely the execution of a specific duty." *Brock*, 246 Ga. App. at 819 (2). Under these circumstances, the statutory duty imposed upon the defendants was discretionary rather than ministerial. Hence, even assuming that defendants completely failed to perform the duty,[4] they nevertheless are entitled to official

---

[4] In their summary judgment submissions, the plaintiffs included the affidavit of the public affairs director of GEMA, attached to which were records reflecting that the safety plan for Mountain Park was not prepared with the involvement of parents, students, and school staff. In contrast, the defendants presented the affidavit of the special assistant principal for

immunity as a matter of law, barring the plaintiffs' negligence claims. See *Leake I*, 274 Ga. App. at 226 (3) ("[T]he complete failure to perform a discretionary act is the same as the negligent performance of that act for the purposes of determining whether such action was discretionary or ministerial.") (punctuation and footnote omitted).

In summary, we conclude that the defendants presented uncontroverted evidence of a valid school safety plan for Mountain Park that predated the February 2002 attack, demonstrating as a matter of law that they fulfilled their ministerial duty under OCGA § 20-2-1185 (a) to have such a plan prepared. In turn, the separate duty imposed by that statute to involve parents, students, and school staff from Mountain Park in the development of the school safety plan is discretionary in nature. Consequently, the plaintiffs' negligence claims are barred by official immunity. The trial court's decision granting summary judgment in favor of appellees and denying appellants' motion for partial summary judgment thus was correct.

*Judgment affirmed. Barnes, C. J., and Andrews, P. J., concur.*

DECIDED MARCH 26, 2007 — ▮▮▮▮▮▮▮▮▮▮

*Don C. Keenan, Allan L. Galbraith*, for appellants.

*Thompson & Sweeny, E. Victoria Sweeny, Stephen D. Pereira, Mahaffey, Pickens & Tucker, Gerald Davidson, Jr.*, for appellees.

---

the Gwinnett County Board of Education averring that the plans submitted and approved by GEMA were developed with input from local parties.