S06G1483. MURPHY et al. v. BAJJANI et al.

(647 SE2d 54)

BENHAM, Justice.

Timothy Bajjani was assaulted by a fellow student while both were attending North Gwinnett High School and suffered severe injuries as a result. Acting individually and on behalf of Timothy, Timothy's parents filed a lawsuit against the Gwinnett County School District, the Gwinnett County Board of Education and the individual members thereof, the superintendent of the Gwinnett County school system, and the principal, assistant principal, and clinic nurse of North Gwinnett High School. The Bajjanis dismissed their claims against the school district, the board of education, and the board members and employees in their official capacities, leaving as defendants the members of the board of education and the principal, the assistant principal, and the clinic nurse in their individual capacities. The trial court granted the defendants' motion for judgment on the pleadings after finding they were entitled to official immunity.

On appeal, the Court of Appeals reversed the judgment after making three determinations: with regard to the allegation of negligent performance of the statutory duty to create a school safety plan that addressed security issues (OCGA § 20-2-1185 (a), (c)), the court ruled that the absence from the record of a school safety plan precluded the grant of judgment on the pleadings (see *Leake v. Murphy*, 274 Ga. App. 219 (617 SE2d 575) (2005)); a claim of negligence per se for failing to report immediately to the district attorney and the police the name of the student believed to have committed an aggravated battery on school property (see OCGA § 20-2-1184 (b)) was viable because Timothy was a member of the class the statute was intended to protect and the harm he suffered — the aggravation of his injuries resulting from the delay in medical care the recipients of the report would have summoned — was the harm the statute was intended to guard against; and the claim that school personnel failed to obtain immediate medical care for Timothy was viable because school personnel had a ministerial duty to provide the student with adequate medical attention and, even if the duty were discretionary rather than ministerial, the allegations of wilfulness, corruption, and malice were circumstances which could abrogate immunity defenses. *Bajjani v. Gwinnett County School Dist.*, 278 Ga. App. 866 (630 SE2d 103) (2006). We granted the defendants' petition for a writ of certiorari to the Court of Appeals to review whether that court correctly determined the defendants were not entitled to judgment on the pleadings.

1. The Court of Appeals rejected the assertion by the defendant school superintendent and board of education members that official

or qualified immunity protected them from the personal liability the plaintiffs sought to impose upon them with regard to the creation of a school safety plan pursuant to OCGA § 20-2-1185.[1] The Georgia Constitution provides:

> Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions....

1983 Ga. Const., Art. I, Sec. II, Par. IX (d). Under this constitutional provision,

> [q]ualified immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption." [Cit.] Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or intent to injure. [Cit.] The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight. [Cit.]

*Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001). The threshold issue for resolution is whether the Court of Appeals correctly determined that the defendants' acts or failure to act were ministerial.

Relying on its decision in *Leake v. Murphy*, supra, 274 Ga. App. 219 ("*Leake I*"), the Court of Appeals determined that the preparation

---

[1] OCGA § 20-2-1185 (a) states:
Every public school shall prepare a school safety plan to help curb the growing incidence of violence in schools, to respond effectively to such incidents, and to provide a safe learning environment for Georgia's children, teachers, and other school personnel. Such plan shall also address preparedness for natural disasters, hazardous material or radiological accidents, acts of violence, and acts of terrorism. School safety plans of public schools shall be prepared with input from students enrolled in that school, parents or legal guardians of such students, teachers ..., community leaders, other school employees and school district employees, and local law enforcement, fire service, public safety, and emergency management agencies....
In subsection (c), the statute provides that "[s]chool safety plans prepared by public schools shall address security issues in school safety zones...."

of a school safety plan was a ministerial duty[2] that the legislature had conferred upon the county school board and the county school superintendent by enacting OCGA § 20-2-59,[3] and the absence of the plan from the appellate record precluded the grant of judgment on the pleadings. We conclude the holding in Division 1 of *Leake I* is incorrect; accordingly we overrule that portion of *Leake I* upon which the Court of Appeals relied.

We apply the same test used by the Court of Appeals in this case and in both *Leake I*, supra, 274 Ga. App. at 221 and *Leake II*, supra, 284 Ga. App. at 495:

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

*Leake I* found a ministerial duty based solely on the presence of the word "shall" in the first sentences of OCGA § 20-2-1185 (a) and (c). We agree with the Court of Appeals that, as a rule of statutory construction, " '[s]hall' is generally construed as a word of mandatory import." *O'Donnell v. Durham*, 275 Ga. 860, 861 (3) (573 SE2d 23) (2002). However, we disagree that a statutorily-mandated action is the equivalent of a ministerial act that deprives the actor of official immunity if done negligently. OCGA § 20-2-1185 (a) is a textbook example of the difference between statutorily-mandated action and a ministerial act, as it clearly requires that action be taken and sets forth parameters for the action to be taken, but the action required is not "simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty" that is the hallmark of a ministerial duty. *Leake I*, supra, 274 Ga. App. at 221; *Leake II*, supra, 284 Ga. App. at 495. Rather, the statutory mandate that a school safety plan be created calls for the plan's creator to exercise a discretionary duty — "the exercise of personal deliberation and judgment, which in turn entails examining

---

[2] But see *Leake v. Murphy*, 284 Ga. App. 490 (2) (644 SE2d 328) (2007) ("*Leake II*") in which the Court of Appeals determined that the third sentence of OCGA § 20-2-1185 (a) (stating that the school safety plan "shall be prepared with input from students . . . , parents . . . , teachers, . . ." and other groups of individuals) imposed a discretionary duty upon the board and superintendent.

[3] OCGA § 20-2-59 states, "The county school superintendent and county board of education shall make rules to govern the county schools of their county."

the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed" (id.) — since the statute requires the creation of a school safety plan that has three goals ("to help curb the growing incidence of violence in schools, to respond effectively to such incidents, and to provide a safe learning environment" (OCGA § 20-2-1185 (a)); that addresses preparedness for five specified threats to school safety ("natural disasters, hazardous materials or radiological accidents, acts of violence, and acts of terrorism") as well as "security issues in school safety zones" (OCGA § 20-2-1185 (c)); and is prepared with input from a variety of persons ("students enrolled in that school, parents or legal guardians of such students, teachers in that school, community leaders, other school employees and school district employees, and local law enforcement, fire service, public safety, and emergency management agencies"). We conclude that the mandated action set forth in OCGA § 20-2-1185 is a discretionary duty rather than a ministerial duty.

2. Plaintiffs alleged that OCGA § 20-2-1184[4] imposed upon the school principal, assistant principal, and clinic nurse a duty to report the commission by a student upon school property of statutorily-delineated prohibited acts, and asserted that the failure of the school employees to comply with that duty subjected them to liability for negligence per se. Noting that negligence per se arises when a statute is violated, the person injured by the violation is within the class of persons the statute was intended to protect, and the harm complained of was the harm the statute was intended to guard against (*Hubbard v. Dept. of Transp.*, 256 Ga. App. 342 (3) (568 SE2d 559) (2002)), the Court of Appeals determined that Timothy, as a high school student, was a member of the class of persons the reporting requirements were intended to protect, and aggravation of Timothy's injuries caused by the delay in medical treatment brought about by the failure to report immediately was the harm the statute was intended to guard against. After observing that a factfinder could find a causal connection between the failure to report and Timothy's aggravated injuries, the Court of Appeals concluded that plaintiffs' claim based on the purported violation of the statute's reporting requirements survived the motion for judgment on the pleadings.

OCGA § 20-2-1184 (d) states that "[a]ny person required to make a report pursuant to this Code section who knowingly and willfully

---

[4] OCGA § 20-2-1184 (a) requires a teacher or other school employee who has reasonable cause to believe that a student has committed on school property a statutorily-proscribed act to immediately report to the school principal or president the name of the student and the act committed. Subsection (b) requires the recipient of such a report who has reasonable cause to believe the report is valid to make an oral report thereof immediately to the school system superintendent and the appropriate police authority and district attorney.

fails to do so shall be guilty of a misdemeanor." Where the breach of a statutory duty can result in criminal liability, the statute is penal in nature and " 'the violation of a penal statute does not automatically give rise to a civil cause of action on the part of one who is [purportedly] injured thereby.' " *Oswald v. American Nat. Can Co.*, 194 Ga. App. 882, 883 (392 SE2d 26) (1990). See also *Cox Broadcasting Corp. v. Cohn*, 231 Ga. 60, 61 (200 SE2d 127) (1973), rev'd on other grounds, 420 U. S. 469 (95 SC 1029, 43 LE2d 328) (1975). "[C]ivil liability may be authorized where the legislature has indicated a strong public policy for imposing a civil as well as criminal penalty for violation of a penal statute." *Key v. Grant*, 238 Ga. App. 818 (1) (520 SE2d 277) (1999). See *Norris v. Sigler Daisy Corp.*, 260 Ga. 271 (1) (392 SE2d 242) (1990) (violation of criminal usury statute can give rise to civil cause of action to recover interest); *Borison v. Christian*, 257 Ga. App. 257 (1) (570 SE2d 696) (2002) (violation of statute limiting bail bond compensation can give rise to civil cause of action to recover excess payment). There is no indication that the legislature intended to impose civil liability in addition to the criminal sanctions set forth in a statute where, as here, nothing in the provisions of the statute creates a private cause of action in favor of the victim purportedly harmed by the violation of the penal statute. *Troncalli v. Jones*, 237 Ga. App. 10 (1) (514 SE2d 478) (1999) (enactment of criminal stalking statute did not create a tort of stalking); *Vance v. T. R. C.*, 229 Ga. App. 608 (1) (a) (494 SE2d 714) (1997); *Cechman v. Travis*, 202 Ga. App. 255 (1) (414 SE2d 282) (1991) (penal statute requiring report of suspected child abuse does not create a private cause of action in tort in favor of child whose abuse was not reported). While OCGA § 20-2-1184 establishes Georgia's public policy concerning the need to report timely to the appropriate authorities the identity of students who commit certain proscribed acts on school grounds, it does not create a civil cause of action for damages in favor of the victim or anyone else for the purported failure to report timely. *Cox Broadcasting Corp. v. Cohn*, supra. Accordingly, defendants were entitled to judgment on the pleadings with regard to this cause of action, and the Court of Appeals erred in holding otherwise.

3. While acknowledging the holding in *Teston v. Collins*, 217 Ga. App. 829 (1) (459 SE2d 452) (1995), that the decisions made by a school principal and a school teacher with regard to medical care for a student injured on campus are "purely discretionary," the Court of Appeals in *Bajjani* found that public school employees should owe a ministerial duty to provide medical care to children attending public school and opined there was a factual issue remaining in this case as to whether that ministerial duty had been breached with regard to Timothy. The Court of Appeals cited *Cantrell v. Thurman*, 231 Ga. App. 510 (499 SE2d 416) (1998), a case in which Cantrell, a jail

inmate, sought damages under 42 USC § 1983 from the sheriff who had custody of him, for depriving him of his Eighth Amendment right to be free from cruel and unusual punishment and substantive due process provided by the Fourteenth Amendment by purportedly denying adequate medical care to a jail inmate. In *Cantrell*, the Court of Appeals affirmed the trial court's grant of summary judgment to the sheriff on Cantrell's constitutional claims and on his tort claims to which the sheriff had raised the defense of official immunity, but the appellate court opined that the sheriff's duty to provide adequate medical attention to inmates was ministerial and not subject to official immunity. Id. at 514.

To the extent the provision of medical care is a ministerial act because the duty is imposed by statute[5] and "because medical care is a fundamental right" (*Cantrell*, supra at 514), the holding in *Cantrell* is not applicable to the case before us because neither OCGA § 20-2-1184 nor § 20-2-1185, the statutes at issue in this case, expressly imposes on public school employees a duty to provide medical aid to students, and the constitutional right to medical care enjoyed by a jail inmate is not shared by a student in a public school. The United States Supreme Court has ruled that "the [U. S.] Constitution imposes upon the State affirmative duties of care and protection [including medical care] with respect to particular individuals . . . when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself. . . ." *DeShaney v. Winnebago County Dept. of Social Svcs.*, 489 U. S. 189, 198-200 (109 SC 998, 103 LE2d 249) (1989). The Eighth Amendment requires the State to provide adequate medical care to prisoners (*Estelle v. Gamble*, 429 U. S. 97 (97 SC 285, 50 LE2d 251) (1976)), and the substantive component of the Due Process Clause of the Fourteenth Amendment requires the State to provide adequate medical care to involuntarily-committed mental patients (*Youngberg v. Romeo*, 457 U. S. 307 (102 SC 2452, 73 LE2d 28) (1982)), and to suspects in police custody who were injured while being apprehended. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U. S. 239 (103 SC 2979, 77 LE2d 605) (1983). However, the Court has stated it "do[es] not, of course, suggest that public schools as a general matter have such a degree of control over children [attending school under compulsory education laws] as to give rise to a constitutional 'duty to protect.'" *Vernonia School Dist. 47J v. Acton*, 515 U. S. 646, 655 (115 SC 2386, 132 LE2d 564) (1995). The U. S. Court of Appeals for the Eleventh Circuit expressly rejected the argument that compulsory school

---

[5] OCGA § 42-4-4 (a) (2) expressly assigns to a sheriff the duty "[t]o furnish persons confined in the jail with medical aid, heat, and blankets. . . ."

attendance laws gave rise to a constitutional duty to provide care and to protect students because "[b]y mandating school attendance, the state simply does not restrict a student's liberty in the same sense that it does when it incarcerates prisoners or when it commits mental patients involuntarily." *Wyke v. Polk County School Bd.*, 129 F3d 560, 569 (11th Cir. 1997).

In keeping with the Supreme Court's binding precedent with regard to the interpretation of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment, and the Eleventh Circuit's persuasive authority on the subject, we conclude that neither the Eighth Amendment nor the Due Process Clause of the Fourteenth Amendment can serve as the basis for a ministerial duty on the part of school employees to provide medical care to Timothy. In light of that conclusion and the lack of an express statutory duty imposed on school employees to provide medical care to students, we conclude the Court of Appeals erred in relying on *Cantrell* to deny judgment on the pleadings to the defendants on the ground that there existed a ministerial duty to provide medical care.

4. In the final two sentences of its opinion, the Court of Appeals alternatively concluded that the plaintiffs' complaint contained allegations of malice sufficient to draw into question the applicability of official immunity to the discretionary acts of the defendants, noting that plaintiffs' complaint contained allegations that the defendants acted with wilfulness, corruption, and malice.[6] A public agent's acts do not have official immunity if they are discretionary acts committed "with actual malice or with intent to cause injury." 1983 Ga. Const., Art. I, Sec. II, Par. IX (d). "Actual malice," as that term is used in the constitutional provision, denotes "express malice," i.e., "a deliberate intention to do wrong," and does not include "implied malice," i.e., the reckless disregard for the rights or safety of others. *Merrow v. Hawkins*, 266 Ga. 390, 391-392 (467 SE2d 336) (1996). A "deliberate intention to do wrong" such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs. In contrast, plaintiffs' allegations of malice are of deliberate acts of wrongdoing done with reckless disregard for the safety of others. As such, they do not allege the actual malice necessary to overcome official immunity for discretionary

---

[6] Plaintiffs alleged in their complaint that "this failure [to develop and implement an effective security plan] is both wilful and wanton, malicious and corrupt arising solely from a systemic need to avoid publicity as an unsafe school system . . ."; "this failure [to seek immediate medical attention for Timothy] is both wilful and wanton, malicious and corrupt arising solely from a systemic need to avoid publicity as an unsafe school system . . ."; and "this failure [to seek immediate medical attention for Timothy] . . . is both wilful and wanton, malicious and corrupt arising from a systemic need to avoid publicity as an unsafe school system."

acts. See *Phillips v. Hanse*, 281 Ga. 133 (2) (637 SE2d 11) (2006); *Adams v. Hazelwood*, 271 Ga. 414 (520 SE2d 896) (1999). Accordingly, the Court of Appeals's alternative conclusion is unsound, and the denial of judgment on the pleadings must be reversed.

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 25, 2007.

*Thompson & Sweeny, E. Victoria Sweeny, Stephen D. Pereira, Elizabeth Kinsinger, Mahaffey, Pickens & Tucker, Gerald Davidson, Jr.*, for appellants.

*Carothers & Mitchell, Richard A. Carothers, Cheryl B. Reid*, for appellees.

*Harben & Hartley, Phillip L. Hartley, Martha M. Pearson*, amici curiae.