[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14534
_____

D.C. Docket No. 1:09-cv-03630-SCJ

JANICE WILLIAMS,
DAVID NAVE, SR.,
JANICE WILLIAMS,
as mother of the David Nave, Jr. and
next friend of the Estate of David Nave Jr.,

Plaintiffs - Appellees
Cross Appellants,

versus

ROLAND K. BOEHRER,
KIRBY G. THREAT,

Defendants - Appellants
Cross Appellees,

KEMUEL A. (KEM) KIMROUGH, SR.,
in his official capacity,
JOHN DOES 1-5,

Defendants
Cross Appellees.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(September 10, 2013)

Before PRYOR and HILL, Circuit Judges, and HALL,[*] District Judge.

PER CURIAM:

This appeal requires us to decide whether we have jurisdiction over the interlocutory appeal of the denial of official immunity under the Georgia Constitution to two law enforcement officers and whether those officers who shot and killed a fleeing suspected felon armed with a knife are entitled to official immunity. David Nave Jr. started a fire in an apartment building, attempted to rob a woman at knife point, and destroyed property in a convenience store. Lieutenant Roland Boehrer and Deputy Kirby Threat of the Sheriff's Office of Clayton County responded to the fire, but before they reached the fire, a man flagged down Boehrer and told him that Nave was his suspect. When Boehrer approached him, Nave drew a knife and ran away from Boehrer. As Boehrer and Threat chased Nave, Boehrer tried to subdue him with a taser, but the taser did not connect properly and failed to subdue him. Threat then shot and killed Nave. Nave's mother, Janice Williams, and father, David Nave Sr., sued Boehrer and Threat for

_____

[*] Honorable James Randal Hall, United States District Judge for the Southern District of Georgia, sitting by designation.

2

wrongful death under Georgia law.  Boehrer and Threat moved for summary judgment and argued that they were immune from suit under the Georgia Constitution.  The district court denied the motion for summary judgment.  We reverse and render a judgment in favor of Boehrer and Threat.

## II.  BACKGROUND

David Nave Jr. started a fire in his bedroom in an apartment that he shared with his mother, Janice Williams.  Williams tried to call 911 to report the fire and inform the dispatcher that Nave might still be inside, but before she could complete the call, several neighbors told her that they had already called 911 and reported the fire.

While Williams attempted to call 911 and waited on the emergency responders, Nave took a knife from the apartment and walked to a nearby convenience store.  Nave approached a woman in the parking lot of the convenience store with the knife and demanded that she give him money.  The woman fled to her van, and Nave yelled, "Give me your money! If not, I'm going to kill you."

Nave then entered the convenience store and threw wine bottles at the cashier's window.  Nave approached an owner of the store aggressively and shouted at him.  He then threw a glass container of sugar to the floor.  While Nave destroyed property in the store, the owners of the store locked him inside.  Nave

3

continued to throw wine bottles.  One of the wine bottles broke a window next to the front door of the store, and Nave left the store through that window.  Nave then broke the windshield and slashed the tires of the store owners' car.

Lieutenant Roland Boehrer and Deputy Kirby Threat of the Sheriff's Office of Clayton County were on duty when Nave started the fire and then went on a rampage at the convenience store.  Boehrer and Threat were having their cars washed near the fire and Nave's rampage.   Threat heard an emergency call about the fire and told Boehrer that they were not far down the road from the fire. Boehrer had completed the cleaning of his vehicle and proceeded first toward the scene of the fire.  When Boehrer reached the convenience store, a man in a white van flagged him down.  The man pointed to Nave and said something along the lines of "He did all of this stuff here.  That is your suspect.  You need to go arrest him."  Boehrer contacted the dispatcher and attempted to confirm that Nave matched the description of the suspect.  The white van pulled behind Boehrer's vehicle, and the driver again pointed and said that Nave was the suspect.  Nave yelled an expletive and spit on the passenger side of the van.

Boehrer approached Nave, and Nave pulled out a knife.  Boehrer ordered Nave to drop the knife, drew his taser, and pointed it at Nave.  Instead of complying with Boehrer's command, Nave fled.  Boehrer informed the dispatch operator that Nave had a knife and chased him into the parking lot of a nearby

4

abandoned convenience store.  By then, Threat had arrived at the convenience store, and he joined the pursuit of Nave.  Boehrer warned Threat that Nave had a knife.  The officers yelled at Nave to stop, but he continued to flee.   At some point in the pursuit, Threat drew his handgun.

The officers testified that Nave turned around and began slashing the knife at Threat.  The officers also testified that Threat lost his footing when he tried to retreat.  Boehrer then fired his taser at Nave.  Because only one prong connected to Nave, the taser did not cause him to drop the knife or stop his attack.

Threat then fired his handgun at Nave.  Threat hit Nave once in the chest, once in the elbow, and once in the back, and Nave fell to the ground.  Threat kicked the knife away, and Boehrer checked Nave for a pulse and asked the dispatcher to send an ambulance.  Nave died in the parking lot.

Monique Anderson, who lived in a nearby apartment, testified that she watched from the balcony of her apartment as the officers chased Nave. Anderson testified that Nave tried to run away from Boehrer and continued to run when Boehrer ordered him to stop.  She testified that she then heard four shots and saw Threat with his gun out.

The Georgia Bureau of Investigation prepared a report on the shooting of Nave.  The report stated that the taser prong attached to the back of Nave's clothing.  The report also stated that Nave was shot once to the torso from the

back, once to the elbow from the back, and once to the chest from the front.  More blood was pooled around the wound to his torso from the back.  A pathologist for the Georgia Bureau of Investigation, Laura Darrisaw, testified that it was her opinion, with a reasonable degree of medical certainty, that the shot to the torso from the back struck Nave before the shot to his chest.

Williams, as mother of Nave and next friend of Nave's estate, and David Nave Sr., as father of Nave, sued the Sheriff of Clayton County, Kemuel Kimbrough Sr., as an official, and Boehrer and Threat, as individuals, in a Georgia state court.  Williams and Nave Sr. complained that the officers had violated Nave's right to be free from the use of excessive force under the Fourth Amendment and right to be free from the deprivation of his life under the Fifth Amendment.  The complaint also stated a claim of wrongful death under Georgia law against Boehrer and Threat.  Kimbrough, Boehrer, and Threat removed the complaint to the district court because it involved federal questions, and Kimbrough filed a motion to dismiss the claims against him.  Williams and Nave Sr. then filed a motion to amend the complaint and asked the court to dismiss their federal claims without prejudice.  Williams and Nave Sr. also filed a motion to remand on the ground that the defendants had failed to file all of the necessary documents from the state court with the district court and because Williams and Nave Sr. had asked that their claims that presented federal questions be dismissed.

6

The district court granted Williams and Nave Sr.'s motion to amend their complaint to omit their claims that presented federal questions, denied their motion to remand, and concluded that, because all of the claims against Kimbrough had been dismissed, his motion to dismiss was moot.

Boehrer and Threat then moved for summary judgment and invoked official immunity under the Georgia Constitution. The district court granted the motion for summary judgment in part and denied the motion in part. The district court concluded that Boehrer and Threat were entitled to summary judgment on the issue whether they acted with actual malice under Georgia law because Williams and Nave Sr. had conceded that they could not argue that the officers acted with actual malice. But the district court also concluded that genuine issues of material fact remained about whether Boehrer and Threat acted with the actual intent to injure Nave because it was not clear from the record that the officers acted with the justifiable intent of self-defense.

## II.  STANDARDS OF REVIEW

"We review questions of subject matter jurisdiction de novo." Belleri v. United States, 712 F.3d 543, 547 (11th Cir. 2013) (quoting Yunker v. Allianceone Receivables Mgmt., Inc., 701 F.3d 369, 372 n.2 (11th Cir. 2012)). We review a grant of summary judgment de novo. Shuford v. Fidelity Nat'l Prop. & Cas. Ins. Co., 508 F.3d 1337, 1341 (11th Cir. 2007).

7

## III.  DISCUSSION

We divide our discussion in two parts.  First, we explain that we have jurisdiction to decide the appeal of the denial of official immunity for Boehrer and Threat, but that we lack jurisdiction to review some of the issues cross-appealed by Williams and Nave Sr.  Second, we explain that Boehrer and Threat are entitled to official immunity under Georgia law.

### A.  We Have Jurisdiction To Review the Denial of Official Immunity Under Georgia Law, but We Lack Jurisdiction Over Some Issues Cross-appealed.

We have jurisdiction to review the denial of official immunity under Georgia law.  We have explained that "[b]ecause sovereign immunity under Georgia law is an immunity from suit, . . . we have jurisdiction over [a] district court's order denying summary judgment based on sovereign immunity under Georgia law." Griesel v. Hamlin, 963 F.2d 338, 341 (11th Cir. 1992).  The immunity granted to state officers by the Constitution of Georgia protects state officers from being "subject to suit."  Ga. Const. Art. I, § 2, ¶ 9(d).

Williams and Nave Sr. argue that we lack jurisdiction over this interlocutory appeal because the district court concluded that several questions of fact remain, but we disagree.  The Supreme Court has explained "that immediate appeal from the denial of summary judgment on a [federal] qualified immunity plea is available when the appeal presents a 'purely legal issue'" but that "instant appeal is not available . . . when the district court determines that factual issues genuinely in

8

dispute preclude summary adjudication." Ortiz v. Jordan, __ U.S. __, 131 S. Ct. 884, 891 (2011) (quoting Johnson v. Jones, 515 U.S. 304, 313, 115 S. Ct. 2151, 2156 (1995)).  But the conclusion of the district court that genuine issues of material fact remained depended on the interpretation of Georgia law by the district court, and Boehrer and Threat challenge those interpretations.  We have jurisdiction to decide the "purely legal issue" whether, on the undisputed facts in this appeal, Boehrer and Threat are immune from suit under Georgia law.  See id.

Williams and Nave Sr. have cross-appealed several decisions of the district court, but we lack jurisdiction over some of these issues.  "[W]e have jurisdiction of Plaintiffs' cross-appeal [of a partial grant of summary judgment] only if it properly falls within our pendent appellate jurisdiction."  Hudson v. Hall, 231 F.3d 1289, 1294 (11th Cir. 2000).  "Under the pendent appellate jurisdiction doctrine we may address [otherwise] nonappealable orders if they are inextricably intertwined with an appealable decision or if review of the former decision [is] necessary to ensure meaningful review of the latter."  Id. (alterations in original) (internal quotation marks omitted).  Williams and Nave Sr. cross-appeal five decisions of the district court: (1) the decision that the failure to file all required pleadings after removal of a case from state court did not deprive the district court of jurisdiction; (2) the decision to allow Williams and Nave Sr. to amend their complaint to dismiss their claims under federal law; (3) the decision to admit hearsay statements

9

contained in the report of the Georgia Bureau of Investigation; (4) the decision that Williams and Nave Sr. had conceded that they could not show actual malice; and (5) the decision that Boehrer and Threat's use of force was a discretionary act. But we lack jurisdiction over the second and third issues. The dismissal of Williams and Nave Sr.'s claims under federal law is not inextricably intertwined with the merits of the state law immunity of Boehrer and Threat. And the alleged hearsay statements about Nave's attempt to rob a woman are not inextricably intertwined with the legal questions of the immunity of Boehrer and Threat under Georgia law.

Boehrer and Threat argue that we also lack jurisdiction to address whether the failure to file all pleadings served on them in the state court deprived the district court of jurisdiction, but we disagree. We must address the jurisdiction of the district court to ensure that we meaningfully review the official immunity of the officers. Hudson, 231 F.3d at 1293. When "federal jurisdiction cannot be found, . . . the district court's entry [or denial] of summary judgment [i]s a nullity," Whitt v. Sherman Int'l Corp., 147 F.3d 1325, 1333 (11th Cir. 1998), and we would have no decision to review.

The district court had jurisdiction over this matter, even though Boehrer and Threat failed to file some of the documents that had been served on them in state court. A defendant who removes a civil action from a state court "shall file in the district court of the United States for the district and division within which such

10

action is pending a notice of removal . . . together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a). We have explained that "the failure to include all state court pleadings and process with the notice of removal is procedurally incorrect but is not a jurisdictional defect," Cook v. Randolph Cnty., Ga., 573 F.3d 1143, 1150 (11th Cir. 2009), and that "the failure to file papers required by the removal statute may be remedied," Usatorres v. Marina Mercante Nicaraguenses, S.A., 768 F.2d 1285, 1286 (11th Cir. 1985) (emphasis omitted). And, if a district court needs a document that has not been filed by the defendants, "[i]t may require the removing party to file with its clerk copies of all records and proceedings in such State court or may cause the same to be brought before it by writ of certiorari issued to such State court." 28 U.S.C. § 1447(b).

 B.  *Boehrer and Threat Are Immune from Suit Under the Constitution of Georgia.*

The Constitution of Georgia grants immunity to officers and employees of government agencies. Ga. Const. Art. I, § 2, ¶ 9(d). An officer "may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions." Id. And an officer "may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions." Id. An officer who does not negligently perform or fail to perform a

11

ministerial function or act with actual malice or actual intent to cause injury in the performance of a discretionary function "shall not be subject to suit or liability, and no judgment shall be entered against them for the performance . . . of their official functions." Id.

Boehrer and Threat performed a discretionary act when they used force to subdue Nave. "A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." Murphy v. Bajjani, 647 S.E.2d 54, 58 (Ga. 2007). "A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Id. "The determination of whether an action is discretionary or ministerial depends on the character of the specific actions complained of, not the general nature of the job, and is to be made on a case-by-case basis." McDowell v. Smith, 678 S.E.2d 922, 925 (Ga. 2009) (alteration, quotation marks, and citation omitted). The Supreme Court of Georgia "ha[s] held that a law enforcement officer exercises discretion . . . [when he] fir[es] a gun at a suspect." Cameron v. Lang, 549 S.E.2d 341, 345–46 (Ga. 2001).

Boehrer and Threat did not "act with actual malice or with actual intent to cause injury" when they used force to subdue Nave. See Ga. Const. Art. I, § 2, ¶

12

9(d).  A law enforcement officer in Georgia is justified in using deadly force in three circumstances that apply here:

> [A law enforcement officer] may use deadly force to apprehend a suspected felon only when the officer reasonably believes that the suspect possesses a deadly weapon or any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; when the officer reasonably believes that the suspect poses an immediate threat of physical violence to the officer or others; or when there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm.

Ga. Code Ann. § 17-4-20(b).  Boehrer and Threat suspected that Nave had started a fire in an apartment complex.  Boehrer had seen Nave draw a knife, reported to dispatch that Nave had a knife, and warned Threat that Nave had a knife.  Boehrer and Threat reasonably believed that Nave, a suspected felon, "possess[ed] a deadly weapon."  Id.  After the officers pursued him, Nave slashed a knife at Threat, posing an "immediate threat of physical violence to the officer."  Id.;  A bystander twice identified Nave as the suspect.  Nave then yelled and spit on the bystander's van, pulled out a knife when approached by Boehrer, and fled.  Boehrer and Threat had "probable cause to believe that [Nave] ha[d] committed a crime involving the infliction or threatened infliction of serious physical harm."  Id.  Boehrer and Threat were justified in their use of force.

13

## IV.  CONCLUSION

We **REVERSE** the denial of official immunity and **RENDER** a judgment in favor of Boehrer and Threat.