MELTON, Justice,
dissenting.
Because Glynn County Police Department Policy 22.16.3 (E) creates a clear ministerial duty for officers to launch a medical screening that inquires into the health status of a detainee that is separate from an officer’s duty to fill out a screening form memorializing that medical screening, and because evidence exists to support the conclusion that Officer Tucker did nothing to fulfill his ministerial duty of initiating the required medical screening under the department policy, Officer Tucker is not protected from potential personal liability by qualified immunity in this case. Ms. Pearce made this specific, and correct, legal argument both in the trial court and here on appeal, and this argument was not somehow made less valid because Ms. Pearce “explicitly abandoned any claim that Pearce’s suicide resulted from Officer Tucker’s failure to complete the screening form.” (Emphasis supplied.) Maj. Op. at 228, n. 4. Again, and as explained more fully below, the ministerial duty that Officer Tucker may have failed to fulfill here, and that demonstrates that he is not protected from potential liability by qualified immunity, is separate from his duty to fill out the screening form, and existed no matter what actions he took or failed to take with respect to filling out the form. I must therefore respectfully dissent from the majority’s erroneous conclusion that Officer Tucker is protected from potential personal liability by qualified immunity in this case.
Glynn County Police Department Policy 22.16.3 (E) states:
Officers detaining a person must complete a screening form on the person before they are placed in the temporary holding cell and before they are transferred to another agency. The purpose of the screening is to determine whether medical attention is required of the person to be detained. The officer must fill out the screening form noting and inquiring as to:
1. The current health of the detainee
2. Medications taken by the detainee
*230 3. Behavior, including state of consciousness and mental status, and
4. Body deformities, trauma markings, bruises, lesions, ease of movement, etc.
(Emphasis supplied.)
From this rule, it is clear that an officer “must” make an “inquir [y]” into four specific areas relating to the health status of a detainee in connection with that officer’s separate obligation to fill out a screening form that memorializes the required inquiry into the detainee’s health status. While an officer may have a discretionary duty with respect to “how” he or she conducts such an inquiry once it is initiated, the department policy indicates that the officer has no discretion whatsoever with respect to whether he or she initiates an inquiry in the first place. Indeed, regardless of how the inquiry is ultimately done, the officer “must” initially take the nondiscretionary action pursuant to Department Policy 22.16.3(E) of “inquiring as to ... [t]he current health of the detainee . . . [m]edications taken by the detainee . . . [b]ehavior, including state of consciousness and mental status, and... [b]ody deformities, trauma markings, bruises, lesions, ease of movement, etc.” In short, the rule makes the initial action of launching an inquiry a ministerial duty, and leaves the manner in which the inquiry is conducted, once in itiated, a matter of discretion. See, e.g., Murphy v. Bajjani, 282 Ga. 197, 202 (3) (647 SE2d 54) (2007) (“[T]he provision of medical care [to an inmate by the sheriff] is a ministerial act because the duty [to provide medical care] is imposed by statute.”).
This shows the flaw in the majority’s analysis. The majority has focused on the “discretion” that Officer Tucker would have had once he initiated a medical screening before first answering the question whether the evidence showed that he actually fulfilled his nondis-cretionary duty to begin a medical screening in the first place. In this regard, the fact that Officer Tucker did not fill out the screening form at all to memorialize the alleged fulfillment of his ministerial duty to conduct the required medical screening would constitute at least some evidence that he did not follow the police department policy of “inquiring as to . . . [Mr. Pearce’s] current health . . . [m]edications taken by [Mr. Pearce] . .. [b]ehavior, including state of consciousness and mental status, and . . . [b]ody deformities, trauma markings, bruises, lesions, ease of movement, etc.” By not doing anything at all to fulfill this ministerial duty of initiating the appropriate medical screening, Officer Tucker would “not enjoy official immunity from any liability resulting from his failure to perform that duty” Happoldt v. Kutscher, 256 Ga. App. 96, 100 (1) (567 SE2d 380) (2002).
*231 Furthermore, the majority’s attempt to criticize this dissent based on the plain language of Department Policy 22.16.3 (E) actually omits the plain language of the policy that directly contradicts the majority’s analysis. The policy unambiguously states, “The purpose of the screening is to determine whether medical attention is required of the person to be detained.” The policy, therefore, explicitly mandates a separate purpose-driven screening, and the majority is factually incorrect when it asserts that there is simply some “undefined medical screening envisioned by Appellant” and that is “exclusively connected to ... the completion of the medical form.” (Maj. Op. at 228, n. 4.) It is difficult to overstate the magnitude of the majority’s error. The majority misreads the policy to require only that the form be filled out and filed, without any obligation to complete the form accurately based on actual observation. This destroys the very purpose of the screening envisioned by the policy itself.
To the extent that Officer Tucker claims that he did conduct the required inquiry, but that he simply did not fill out the form memorializing that fact, such a claim would merely create an issue of fact to be resolved with respect to the question of qualified immunity, but it would not show that Officer Tucker was entitled to immunity as a matter of law. Indeed, just because Officer Tucker claims that he initiated and conducted the required inquiry, that does not necessarily make it true. This is especially the case where, as here, the very reason that officers are required to fill out the screening form is to ensure that proper inquiries are documented. If an officer simply had to say that he or she conducted a required inquiry in order to be entitled to official immunity, but never had to document on the screening form that the required inquiry was actually made, this would defeat the entire purpose of the police policy requiring that inquiries “must” be documented on the screening form. I therefore agree with the trial court that Officer Tucker was not entitled to immunity in this case.
Because Officer Tucker is not entitled to immunity here, I also disagree with the majority’s refusal to address the question whether the general rule regarding suicide as an intervening cause applies in prisoner suicide cases. With respect to this issue, I believe that this Court needs to explicitly resolve the tension between the cases indicating that the general rule does not apply in cases where a special relationship exists, but somehow still applies in cases involving the special relationship between an officer and his prisoner.
I therefore respectfully dissent from the majority opinion.
I am authorized to state that Chief Justice Thompson joins in this dissent.
*232 Decided June 20, 2016.
Bowen Painter, Paul W. Painter III; Brannen, Wasden & Painter, W. Richard Dekle, for appellants.
Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, Richard K. Strickland, Steven G. Blackerby; Aaron W. Mumford, for appellee.