A05A0645. LEAKE et al. v. MURPHY et al.
(617 SE2d 575)

MIKELL, Judge.

This is an appeal from the grant of a motion to dismiss a negligence action brought by Alan and Sandy Leake, individually and as parents of Anna Elisabeth Leake ("Anna"), a child who was grievously injured in February 2002 when a deranged individual attacked her with a hammer at Mountain Park Elementary School in Gwinnett County. The Leakes contend that the defendants, including the individual members of the Gwinnett County Board of Education[1] ("Board") and the Superintendent of the Gwinnett County School District, J. Alvin Wilbanks, failed to develop a safety plan for the school which addressed security issues, as required by OCGA § 20-2-1185. That Code section provides in pertinent part that "[e]very public school shall prepare a school safety plan to help curb the

---

[1] The Board members who were named as defendants are: Mary Kay Murphy, chairman; Billy Britt, vice-chairman; Robert McClure; Louise Radloff; and Dan Seckinger. Plaintiffs consented to the dismissal of the Board as an entity because "a county board of education, unlike the school district which it manages, is not a body corporate and does not have the capacity to sue or be sued." (Citations omitted.) *Cook v. Colquitt County Bd. of Ed.*, 261 Ga. 841 (412 SE2d 828) (1992). The Leakes also consented to the dismissal of the Gwinnett County School District on the basis of sovereign immunity. See *Harper v. Patterson*, 270 Ga. App. 437, 438 (1) (a) (606 SE2d 887) (2004).

growing incidence of violence in schools [and] to respond effectively to such incidents. . . . School safety plans . . . shall address security issues."[2] In an additional count, the complaint alleges that the defendants, including the school's principal, Debbie Allred, and her front office staff members, Connie Finn and Melissa Switzer, are liable for Anna's injuries based on their negligent failure to implement and enforce measures designed to control access to the school as well as to monitor people entering the school under a sign-in policy developed a year earlier. The defendants moved to dismiss the complaint on the basis of official immunity, and the trial court granted the motion. For the reasons that follow, we reverse as to the individual Board members and the Superintendent on the claim alleging failure to prepare a security plan pursuant to OCGA § 20-2-1185. The remainder of the judgment is affirmed.

> A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. . . . In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.[3]

"Our review is de novo."[4] Construed in its proper light, the complaint shows that on February 6, 2001, one year prior to the attack on Anna, a deranged convicted felon, William Cowart, walked into the school holding the picture of a young girl. Allred, the principal, confronted him; he left, and she called the police. Following this incident, the school instituted an access control policy which involved stationing an individual in the lobby to screen persons entering the school and ensure that they signed in at the principal's office, which was located adjacent to the lobby. The policy also required the principal and her office staff to monitor such persons through the office's floor-to-ceiling glass window.

---

[2] OCGA § 20-2-1185 (a), (c).

[3] (Footnotes omitted.) *Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997).

[4] (Punctuation omitted.) *Ardizonne v. Dept. of Human Resources*, 258 Ga. App. 858 (575 SE2d 738) (2002).

The following year, on February 21, 2002, at approximately 2:50 p.m., Chad Brant Hagaman, a paranoid schizophrenic who heard voices telling him to kill people, walked through the school's front doors armed with a hammer. The complaint asserts that Hagaman was not confronted, screened, detained, or examined as to his purpose although he walked past the principal's office. Hagaman walked approximately 100-150 feet until he came upon a row of fourth-grade students lined up in a hallway. When he reached ten-year-old Anna, Hagaman swung the hammer and embedded the claw end of it in her skull. The metal claws penetrated her brain, leaving her with permanent neurological deficits as well as post-traumatic stress disorder.

1. We first address the Leakes' contention that the trial court erred in ruling that the defendants are protected by official immunity from any claim arising from their failure to prepare a school safety plan which addressed security issues.

Under Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d), "public officials are immune from damages that result from their performance of discretionary functions, unless those functions were undertaken with malice or intent to cause injury."[5] Conversely, official immunity does not apply to the performance of ministerial duties.[6] Therefore, the threshold inquiry is whether the duty to prepare a safety plan pursuant to OCGA § 20-2-1185 is ministerial rather than discretionary.

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.[7]

As noted above, OCGA § 20-2-1185 states in part: "Every public school *shall* prepare a school safety plan to help curb the growing incidence of violence in schools. . . . School safety plans prepared by public schools *shall* address security issues in school safety zones as

---

[5] (Citation omitted.) *Phillips v. Walls*, 242 Ga. App. 309, 311 (1) (529 SE2d 626) (2000).

[6] *Meagher v. Quick*, 264 Ga. App. 639, 642 (1) (594 SE2d 182) (2003).

[7] (Citation omitted.) *Aliffi v. Liberty County School Dist.*, 259 Ga. App. 713, 715 (578 SE2d 146) (2003).

defined in [OCGA § 16-11-127.1 (a) (1)]."[8] The word " '[s]hall' is generally construed as a word of command."[9] Therefore, OCGA § 20-2-1185 mandates the preparation of a school safety plan which addresses security issues for every public school in this state.[10] The duty is absolute, and, as a result, ministerial. Furthermore, we hold that the legislature has conferred this duty upon the county school superintendent and the county board of education through the passage of OCGA § 20-2-59, which provides that the superintendent and the board "shall make rules to govern the county schools of their county."[11] Accordingly, we hold that the duty to prepare a school safety plan for the school at issue fell to Superintendent Wilbanks and the Board members. We further hold that the remaining defendants, the principal and her front office staff, are not vested by the legislature with rule-making authority and thus cannot be held liable for damages for failure to prepare such a plan.

The defendants contend that the use of the word "shall" in OCGA § 20-2-1185 does not create a ministerial duty, citing *Norris v. Emanuel County*.[12] That case is distinguishable. The statute under consideration in *Norris*, OCGA § 32-6-50 (c) (1), states that "[c]ounties and municipalities shall place and maintain upon the public roads of their respective public road systems such traffic-control devices as are necessary to regulate, warn, or guide traffic." We held that the " 'as necessary' language connotes discretion,"[13] such that the county road superintendent and road crew supervisor had official immunity from an action alleging that they negligently failed to warn of an eroded road shoulder. In contrast, OCGA § 20-2-1185 says that *every* public school shall prepare a school safety plan which shall address security issues. No exceptions are listed. Thus, the duty to prepare such a plan for a public school is ministerial, not discretionary.

In terms of immunity, however, the duty to prepare the plan must be distinguished from its contents. We do not agree with the Leakes'

---

[8] (Emphasis supplied.) OCGA § 20-2-1185 (a), (c). " 'School safety zone' means in, on, or within 1,000 feet of any real property owned by or leased to any public or private elementary school, secondary school, or school board and used for elementary or secondary education." OCGA § 16-11-127.1 (a) (1).

[9] (Citation omitted.) *Mead v. Sheffield*, 278 Ga. 268, 269 (601 SE2d 99) (2004).

[10] See *O'Donnell v. Durham*, 275 Ga. 860, 861 (3) (573 SE2d 23) (2002) (" 'Shall' is generally construed as a word of mandatory import.") (citation omitted).

[11] See *Perkins v. Morgan County School Dist.*, 222 Ga. App. 831, 833-834 (1) (476 SE2d 592) (1996) (board of education members developed policies and procedures); *Foster v. Cobb County Bd. of Ed.*, 133 Ga. App. 768, 769 (213 SE2d 38) (1975) (board of education members control and manage school district).

[12] 254 Ga. App. 114 (561 SE2d 240) (2002).

[13] Id. at 118 (2).

assertion that the manner in which a school safety plan is prepared, and its ultimate contents, require solely the performance of ministerial functions. In this regard, the relevant portions of OCGA § 20-2-1185 state:

> (a) . . . School safety plans of public schools shall be prepared with input from students enrolled in that school, parents or legal guardians of such students, teachers in that school, community leaders, other school employees and school district employees, and local law enforcement, fire service, public safety, and emergency management agencies.

Thus, the statute calls for the input of a variety of individuals in the development of a safety plan. And, although the plan must address "security issues,"[14] those issues are not defined. The legislature has not given specific direction on what elements to include in a safety plan; for example, whether to install electronic scanning devices at the entrance to the school, or to keep the doors locked such that visitors gain entrance by buzzer. These procedures would necessarily differ from school to school, and addressing these issues is left to the discretion of the school authorities. "A discretionary act . . . calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed."[15] Based on this definition, we conclude that the development of the contents of a school safety plan calls for the exercise of discretion.

Contrary to the Leakes' assertion, *Meagher v. Quick*[16] does not support their argument that the development of the contents of a school safety plan is a ministerial function. In *Meagher*, we held that police officers were not entitled to official immunity from a wrongful death action based on their failure to complete a Family Violence Report, as required by OCGA § 17-4-20.1 (c), after responding to a complaint of child abuse.[17] The child was beaten to death after officers left the residence to which they had been summoned.[18] OCGA § 17-4-20.1 (c) provides: "Whenever a law enforcement officer investigates an incident of family violence, whether or not an arrest is made, the officer shall prepare and submit . . . a written report of the

---

[14] OCGA § 20-2-1185 (c).

[15] (Citations and punctuation omitted.) *Hemak v. Houston County School Dist.*, 220 Ga. App. 110, 112 (469 SE2d 679) (1996).

[16] Supra.

[17] Id. at 644 (1).

[18] Id. at 641.

incident entitled 'Family Violence Report.' " The statute lists 13 pieces of information that the report must contain. Construing the statute, we held that completion of the report was a ministerial function, requiring "merely the execution of a specific duty."[19]

In the case sub judice, although the preparation of a school safety plan which addresses security issues is a mandatory ministerial duty under OCGA § 20-2-1185, the development of its contents and the manner of its enforcement have not been specifically directed by the legislature, unlike the Family Violence Report prescribed by OCGA § 17-4-20.1 (c). Thus, the development of the contents and manner of enforcement of a school safety plan are discretionary functions.[20] If the present lawsuit alleged that the defendants had developed an inadequate plan and that the plan's inadequacies resulted in Anna's injury, the defendants would be entitled to official immunity. It is the total absence of any plan which precludes dismissal of the lawsuit.

Moreover, the absence of such a plan from the record in this case necessitates reversal of the trial court's order on this issue. A motion to dismiss should not be granted unless "the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought."[21] At this procedural juncture, there is no evidence of record that the Superintendent and the Board members have fulfilled their legislative mandate to prepare a safety plan that addressed security issues for the school at issue.[22] "It is a well-established principle that a public official who fails to perform purely ministerial duties required by law is subject to an action for damages by one who is injured by his omission."[23] It follows that the trial court erred in dismissing that portion of the complaint which alleges that the Superintendent and the Board members failed to develop a safety plan for the school as required by OCGA § 20-2-1185. On the other hand, if a motion for summary judgment is filed and evidence of a plan that predates the attack on Anna and addresses security issues is presented, the defendants would be entitled to official immunity.

---

[19] Id. at 644 (1).

[20] See, e.g., *Teston v. Collins*, 217 Ga. App. 829, 830 (1) (459 SE2d 452) (1995) (school authorities entitled to official immunity in suit arising from injuries sustained by student during an altercation with a visitor; OCGA § 20-2-1180, which prohibits loitering within school safety zone, gives school principals discretionary authority to control visitors).

[21] *Anderson*, supra.

[22] Compare *Perkins*, supra (record on summary judgment revealed that board of education members developed policies and procedures in form of handbook distributed to students).

[23] *Cooper v. Paulding County School Dist.*, 265 Ga. App. 844, 845 (595 SE2d 671) (2004).

2. "[M]onitoring, supervising, and controlling the activities of students is a discretionary action protected by the doctrine of official immunity."[24] The Leakes argue that the trial court erred in finding that the defendants' acts or omissions related to a duty to monitor, supervise, or control students. To the extent that the trial court's order can be interpreted as a ruling that the duty of Wilbanks and the Board members to prepare a school safety plan which addressed security issues was a discretionary function, the court erred, as we have held in Division 1. The applicability of this argument to the principal and her front office staff (defendants Allred, Finn and Switzer) will be discussed below.

3. In their third enumerated error, the Leakes argue that the trial court erred in finding that the failure of defendants Allred, Finn and Switzer to comply with school policies and procedures adopted after the 2001 incident was discretionary rather than ministerial. We disagree with the Leakes and agree with the trial court.

"Generally, the determination of whether an action is discretionary or ministerial depends on the character of the specific actions complained of . . . and is to be made on a case-by-case basis."[25] "The Georgia courts have consistently held that making decisions regarding the means used to supervise school children is a discretionary function of the school principal."[26] "Supervision of students is considered discretionary even where specific school policies designed to help control and monitor students have been violated."[27] The rule that principals and teachers are immune from actions involving supervising and monitoring students has been applied uniformly in cases where students have been injured or killed.[28]

Supervising and monitoring students includes, for purposes of deciding immunity questions, safeguarding the students from harm caused by intruders. A binding precedent is *Kelly v. Lewis*.[29] *Kelly*

---

[24] (Citation omitted.) *Perkins*, supra at 835 (2).

[25] (Citation omitted.) *Wright v. Ashe*, 220 Ga. App. 91, 93 (469 SE2d 268) (1996).

[26] (Citations omitted.) Id. at 93-94.

[27] (Citations omitted.) *Chamlee v. Henry County Bd. of Ed.*, 239 Ga. App. 183, 184 (1) (521 SE2d 78) (1999) (student injured while test driving car during automotive shop class).

[28] See *Aliffi*, supra (child accidentally killed in school garage); *Brock v. Sumter County School Bd.*, 246 Ga. App. 815 (542 SE2d 547) (2000) (child killed while waiting for school bus; supervision of student safety held discretionary); *Payne v. Twiggs County School Dist.*, 232 Ga. App. 175, 177 (2) (501 SE2d 550) (1998) (alleged failure to enforce policy prohibiting students from carrying weapons on school property); *Perkins*, supra (alleged failure to enforce policy governing early dismissal of students); *Wright*, supra (child killed in automobile accident while skipping school; alleged failure to enforce policies applicable thereto); *Guthrie v. Irons*, 211 Ga. App. 502, 505-506 (2) (439 SE2d 732) (1993) (student who was attacked by another student in hallway claimed teacher failed to follow policy which required her to monitor halls), disapproved on other grounds, *Gilbert v. Richardson*, 264 Ga. 744, 750 (4) (452 SE2d 476) (1994).

[29] 221 Ga. App. 506 (471 SE2d 583) (1996).

involved the fatal shooting of a student, apparently at or near the entrance to a public high school. The plaintiffs alleged that because a teacher failed to stand at the entrance in the morning, which was his assigned duty, the teacher could be held liable for negligent failure to perform a ministerial duty. The plaintiffs further contended that the principal could be held liable for failing to post a duty roster identifying the persons responsible for monitoring the entrance.[30] We disagreed, stating "that the complete failure to perform a discretionary act is the same as the negligent performance of that act for the purposes of determining whether such action was discretionary or ministerial."[31] Similarly, the failure of defendants Allred, Finn and Switzer to monitor the entrance lobby to guard against assailants like Hagaman is a "complete failure to perform a discretionary act." Georgia's doctrine of official immunity means that they cannot be held accountable for their failure.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Phipps, J., concur.*

DECIDED JULY 7, 2005.

*Don C. Keenan, Allan L. Galbraith, Sarah A. Pawlik*, for appellants.

*Thompson & Sweeny, E. Victoria Sweeny, Stephen D. Pereira, Davidson & Tucker, Gerald Davidson, Jr.*, for appellees.

---

[30] Id. at 506-507.
[31] Id. at 509.