A08A0645. SMITH v. McDOWELL.
(666 SE2d 94)

SMITH, Presiding Judge.

In this appeal, we revisit the issue of official immunity with respect to school employees. K. L., the six-year-old daughter of appellant Antuan Smith, was abducted from Cook County Primary School by her noncustodial father. The trial court granted summary judgment in favor of the school principal and the school receptionist, Stacey McDowell, concluding that these defendants were immune from liability under the doctrine of official immunity because they were performing discretionary functions at the time of the incident. Smith appeals only the grant of summary judgment to McDowell. Because McDowell's acts were entirely ministerial and therefore not within the scope of official immunity, we reverse.

[40] *Mimms*, supra; *Salmeron*, supra at 736-739 (1).

Construed in favor of the nonmovant, *Reece v. Turner*, 284 Ga. App. 282, 283 (643 SE2d 814) (2007), the evidence shows that Smith enrolled K. L. in Cook County Primary School in August 2005. Smith told the school secretary, who is not a party to this appeal, that Smith's estranged husband, Sidney Ledgester, had abducted the child in the past and should not have any contact with her. The secretary did not place a warning to this effect on the child's registration form or enter it into the school's computer system. The registration form states, however, that the only persons authorized to check the child out of school, other than Smith, are K. L.'s grandmother and aunt.

As the school receptionist, McDowell was responsible for checking children out of school. Before releasing any student to anyone other than a parent she knew, McDowell was supposed to check the child's registration form, also called a student information card, to verify that the person picking up the child was authorized to do so. McDowell repeatedly and positively testified that she had no discretion with regard to this procedure; she was required to check the card, and she was required to consult an administrator if the card did not list the person seeking to check out the child, even if she received a note or a fax.

On November 11, 2005, McDowell received a telephone call and a fax from a woman posing as Smith, instructing her to release K. L. to Ledgester. McDowell testified that the woman told her to request Ledgester's identification when he arrived, and she did so. McDowell searched for K. L.'s information card in order to determine if Ledgester was listed on it, but she was unable to locate the card. McDowell found K. L.'s classroom by checking her file in the school's computer system, which contained no warning about Ledgester.[1] McDowell called K. L.'s teacher, who sent the child to the office. She recognized her father and was happy to see him, and McDowell released K. L. to him. Later in the day, K. L.'s grandmother called to ask why the child had not been on the school bus, and McDowell then realized that the fax was a forgery.

McDowell explained that she did not follow the required procedure because K. L.'s card had been filed according to the child's teacher, not alphabetically, and the child had changed teachers and McDowell was unaware of the change. McDowell testified that she should have gone to an administrator to determine how to handle the situation. However, the principal was out of the office and McDowell

---

[1] It does not appear, however, that McDowell made any further attempt to locate K. L.'s information card once she had identified the child's classroom.

did not know where the vice-principal was, although the principal testified that the vice-principal was at the school.

According to the school's principal, there were written procedures in place at the time of the incident that required that all student information cards be filed alphabetically and that an administrator be consulted before any faxed note was accepted prior to checking out a student. McDowell testified that she was not aware of the existence of written procedures until after this incident, when Timmie Baker showed them to her. McDowell received a letter of reprimand from the school for failing to follow procedures.

In her sole enumeration of error, Smith contends that the trial court erred in determining that McDowell's actions were discretionary and thus shielded by official immunity. We agree.

Under Georgia law, "public officials are immune from damages that result from their performance of discretionary functions, unless those functions were undertaken with malice or intent to cause injury." (Citation and punctuation omitted.) *Harper v. Patterson*, 270 Ga. App. 437, 440 (2) (606 SE2d 887) (2004). Absent malice or intent to injure, which are not alleged here, public school officials and employees may be held personally liable only for the negligent performance of ministerial acts. *Wright v. Ashe*, 220 Ga. App. 91, 92 (469 SE2d 268) (1996).

In a recent decision, the Georgia Supreme Court reiterated that a ministerial duty is "simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty," while a discretionary duty requires "the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way *not specifically directed*." (Citations omitted; emphasis supplied.) *Murphy v. Bajjani*, 282 Ga. 197, 199 (1) (647 SE2d 54) (2007). As we observed in *Joyce v. Van Arsdale*, 196 Ga. App. 95 (395 SE2d 275) (1990), we must distinguish between "rule making or deliberation" in a supervisory capacity and "a specific task which became necessary after the discretionary decision" was made. Id. at 97. "[T]he execution of a specific task is characterized as ministerial even though the manner in which it is accomplished is left to the employee's discretion." (Citation omitted.) Id.

McDowell asserts that her decision not to follow the policy in this case constituted gathering facts and exercising her judgment. But application of that argument here requires the conclusion that a school employee is "gathering facts" even when following the simplest instructions and that failure to follow such instructions constitutes "exercising judgment." Under that view, any school employee who *disobeys* an explicit, unambiguous written policy would be exercising discretion in doing so. This stands the plain

language of the law on its head. As the Supreme Court of New Hampshire observed, "it would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail." (Citations and punctuation omitted.) *Hacking v. Town of Belmont*, 143 NH 546, 552 (I) (736 A2d 1229) (1999).

The rules of official immunity should be consistently applied to all state actors, including the distinction between ministerial and discretionary acts. Yet it is plain upon a review of recent decisions that a de facto absolute immunity for school employees has developed gradually across the last decade. Not one recent case exists in which the Georgia courts have found a ministerial duty on the part of a school employee.

The appeal before us, however, presents a clear example of a ministerial function. In *Murphy*, supra, the Georgia Supreme Court reversed the Court of Appeals' holding that a statutory mandate to "create a school safety plan" was ministerial. But the action the school officials failed to take in *Murphy* involved a clear discretionary duty in determining what the safety plan should include and taking actions not specifically directed. Id., 282 Ga. at 199-200. In the case before us, in contrast, there was a hard and fast policy with no exceptions, a policy which explicitly allowed for no discretion. The receptionist repeatedly and positively testified that she had no discretion. The child was not to be released without consulting the card. The receptionist released the child without consulting the card. If the parent sent a fax request for release, the receptionist was instructed to consult an administrator. She did not. Her conduct constitutes not one, but two violations of absolute and ministerial duties: She failed to act in a way that *was* specifically directed.

While other decisions of this court have stretched the concept of a discretionary act in school cases to its outermost limits, those decisions can and should be distinguished on their facts. In *Harper v. Patterson*, supra, students' parents argued that the statutory duty of a teacher to supervise an aide in the classroom was violated when the aide molested the students. Id., 270 Ga. App. at 440 (2). But that case involved a discretionary, general supervision, not a specific policy. Similarly, *Payne v. Twiggs County School Dist.*, 232 Ga. App. 175, 177 (2) (501 SE2d 550) (1998), involved a failure to discipline a student who brought a knife onto a school bus — once again, a general exercise of discretion in determining when and how to penalize a student for violation of the school rules.

In *Leake v. Murphy*, 274 Ga. App. 219 (617 SE2d 575) (2005) (overruled on other grounds in *Murphy v. Bajjani*, supra), plaintiffs claimed "negligent failure to implement and enforce measures designed to control access to the school as well as to monitor people

entering the school under a sign-in policy developed a year earlier." Id. at 220. We held that "the failure of defendants . . . to monitor the entrance lobby to guard against assailants like Hagaman is a 'complete failure to perform a discretionary act.' " Id. at 226 (3). *Leake* was not merely a failure to enforce a sign-in policy, but specifically a failure to enforce that policy by devising a method of monitoring the entrance to the school — a discretionary act.

In *Reece v. Turner*, supra, a teacher molested a female student and was placed on probation by the school. The school did not report the incident to child protective services as required by state statute, but instead prepared an internal memorandum placing "certain requirements and restrictions" upon the teacher as a condition of continued employment. (Punctuation omitted.) Id., 284 Ga. App. at 284. These restrictions included: "An instructor must [always] be supervising any activity where students are present. You are never to be alone with a student; the presence of an instructor will be required." (Punctuation omitted.) Id. The teacher violated these restrictions and molested another student.

This court held that violations of the internal memorandum did not involve ministerial acts on the part of the principal and department director, reasoning that,

> although framed in those terms, the crux of Turner's complaint against the appellants is that they negligently failed to supervise Turner as a student and Spaur as an employee in a manner sufficient to protect Turner from molestation. As such, this case is controlled by our precedent holding that the making of decisions regarding the supervision of students and school personnel is a discretionary function requiring personal deliberation and judgment.

(Citations and punctuation omitted.) *Reece v. Turner*, supra, 284 Ga. App. at 285 (1).

But *Reece* should be distinguished because, once again, the alleged misconduct involved the principal and department head's general duty to supervise and enforce the restrictions on the teacher's employment. This duty required the exercise of discretion, deliberation, and judgment with regard to how, when, and by whom the guidelines would be enforced. Additionally, the teacher, not his supervisors, violated the restrictions on his continued employment.

*Perkins v. Morgan County School Dist.*, 222 Ga. App. 831, 833-834 (1) (476 SE2d 592) (1996), involved an alleged failure to follow a sign-out policy. At first glance, it appears to be on all fours with this case, but the facts in *Perkins* are distinguishable from those presented here in several crucial respects. The stated policy was

somewhat elastic, and the school secretary understood that she had discretion to interpret it. Id. at 832. The policy provided that a parent "or authorized person" was to sign the child out, unless the child drove a car to school. A parent gave permission by telephone for her child to leave school and walk to her sister's house to babysit. Id.[2] A parent did not sign the child out, but the secretary exercised her discretion to allow permission to be given by telephone. The child was murdered by a stranger en route. We held that the policy allowed the secretary to exercise discretion to release a student on a telephone call instead of in person and that she was an "authorized person" to sign the student out. Id. at 835.

Outside the school context, Georgia courts have clearly recognized ministerial acts, including those taken by supervisors. See *Van Arsdale*, supra (county road superintendent negligently placed road barrier); *Hicks v. McGee*, 283 Ga. App. 678 (642 SE2d 379) (2007) (superior court clerk failed to report sentence to Department of Corrections); *Clive v. Gregory*, 280 Ga. App. 836 (635 SE2d 188) (2006), aff'd, *Gregory v. Clive*, 282 Ga. 476 (651 SE2d 709) (2007) (county building inspector failed to inspect); *Happoldt v. Kutscher*, 256 Ga. App. 96, 98-99 (1) (567 SE2d 380) (2002) (subdivision review officer failed to inspect). There should be no special category of absolute immunity for school employees. The effective elimination of ministerial acts on the part of school employees appears to be unique to Georgia because other jurisdictions that recognize the distinction have found ministerial conduct in the school context.[3]

On the one hand, the General Assembly requires that parents entrust their small children to the public schools, unless they have the resources to educate them privately or at home. OCGA § 20-2-690.1. On the other hand, our courts increasingly allow school employees to avoid responsibility for all harm to the children placed in their custody by law. At some point, this accelerating trend must come to a halt. Otherwise, the most flagrant failure to follow *any*

---

[2] As in the case before us, there appears to be some suggestion that the telephone call was a fraud. But that does not explicitly appear in the opinion.

[3] See, e.g., *Hacking*, supra (failure to control basketball game); *Kolaniak v. Bd. of Ed. &c.*, 28 Conn. App. 277 (610 A2d 193) (1992) (failure to clear school walkways); *Rupp v. Bryant*, 417 S2d 658, 665 (Fla. 1982) (failure to supervise school club to prevent hazing); *Hill v. Galesburg &c. School Dist. 205*, 346 Ill. App. 3d 515, 520 (805 NE2d 299) (2004) (failure to provide eye protection in chemistry lab); *Nero v. Kansas State Univ.*, 253 Kan. 567, 587-588 (861 P2d 768) (1993) (failure to protect from sexual assault in dormitory); *Schwindel v. Meade County*, 113 SW3d 159, 169 (Ky. 2003) (failure to properly construct or maintain bleachers); *Larson v. Independent School Dist. &c.*, 289 NW2d 112, 120 (Minn. 1980) (failure to "spot" student properly in gymnastics class); *Younger v. Buckeye Local School Dist.*, 1992 Ohio App. LEXIS 3607 (1992) (failure to maintain bleachers); *Haney v. Bradley County Bd. of Ed.*, 160 SW3d 886, 900-901 (Tenn. App. 2004) (failure to enforce school sign-out policy); *Myers v. Doe*, 52 SW3d 391, 396 (Tex. App. 2001) (failure to enforce safety plan).

school policy, no matter how plainly and unambiguously stated, is "discretionary" and therefore without legal consequences. Such a decision abrogates the constitutional right of citizens to seek redress for injuries inflicted by the ministerial acts of school employees, especially upon young children who are not capable of caring for themselves or exercising judgment. If Georgia school employees are to be clothed with absolute immunity under any and all circumstances, that is a decision to be made by the Georgia General Assembly; it is not the function of this, or any, court.

*Judgment reversed. Mikell and Adams, JJ., concur.*

DECIDED JULY 15, 2008

*Kirk J. Post, Shiv K. Kapoor*, for appellant.

*Claxton & Claxton, William P. Claxton, Darcy S. DuVal*, for appellee.