### A08A1243. DOLLAR et al. v. GRAMMENS et al.
(670 SE2d 555)

PHIPPS, Judge.

David Dollar was injured during a science project at his middle school. David's father, John Dollar, acting individually and on behalf of David, sued numerous school personnel in their individual capacities, including a teacher, Patricia Grammens; the principal, Deborah Sarver; and the superintendent, Paula Gault. The trial court granted the defendants' motions for summary judgment, finding that they were entitled to official immunity. Dollar challenges these rulings on

---

[20] Id. at 144 (footnote omitted; emphasis supplied).
[21] Id. at 147-148 (3).

appeal. For reasons that follow, we reverse the ruling as to Grammens and affirm as to Sarver and Gault.

On May 21, 2004, Grammens, an eighth-grade science teacher at South Forsyth Middle School, prepared to conduct an experiment that would simulate a rocket for the purpose of demonstrating various principles of flight, including thrust, air pressure, and propulsion. Grammens deposed that she found the instructions for the experiment on a "NASA website." Pertinently, the instructions called for a "two-liter soda bottle" to serve as the "rocket" that would be "launched" by means of air pressure; the plastic bottle would be initially secured to an apparatus serving as the "launch pad" by a metal pin, created by bending "a piece of 1/8[-inch] or 3/16[-inch] steel into a 'U' shape 'pull pin' "; a string would be attached to the metal pin; about two or three cups of water would be poured into the bottle; the bottle would then be pressurized by forcing air into it, by use of an air compressor; and the bottle would propel upward after the string, and consequently, the metal pin, were pulled away from the bottle.

Grammens used an air compressor to force air into a two-liter soda bottle, which was being secured to the "launch pad" by a metal pin around the bottle's neck. David, a student in Grammens's class, either volunteered or was asked by Grammens to pull the string attached to the metal pin to "launch" the "rocket." Grammens instructed the other students to stand back from the launching area. When David pulled the string, the metal pin struck and injured his eye.

Seeking damages in this lawsuit, Dollar relied upon an eye protection policy promulgated by the Forsyth County Board of Education in accordance with OCGA § 20-9-1 and Ga. Comp. R. & Regs. r. 160-4-3-.10. Tracking the language of that rule, the eye protection policy pertinently stated:

> The Forsyth County Board of Education requires that persons wear appropriate industrial-quality eye protection equipment at all times while participating in or observing vocational, industrial arts, chemical, physical, or any other course of instruction involving any of the following: . . . Caustic or explosive materials. . . . Each school shall provide eye protection equipment to every student, teacher, and visitor while using or observing machines or operations listed above.

None of the students was wearing eye protection while the experiment was being conducted. Dollar claimed that the defendants'

negligent failure to comply with or enforce the policy had resulted in David's injury.

The defendants sought summary judgment on the ground that Dollar's negligence claims complained of discretionary acts, for which they were protected from personal liability by official immunity. Dollar countered that complying with and enforcing the eye protection policy entailed only ministerial tasks and thus official immunity did not so protect the defendants. The trial court agreed with the defendants and thus granted them summary judgment. Dollar's appeal challenges the trial court's determination that he is charging the defendants with the negligent performance of discretionary acts.

> [Official] immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or intent to injure. The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight.[1]

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.[2]

> Analysis of a public official's acts as ministerial or discretionary is dependent upon the facts of the individual case, particularly such fact or facts as specifically relevant to the official act or omission from which liability arises. The question whether a duty is ministerial or discretionary turns on the character of the specific act, not the general nature of the official's position.[3]

---

[1] *Murphy v. Bajjani*, 282 Ga. 197, 198 (1) (647 SE2d 54) (2007) (citations omitted).

[2] Id. at 199 (citation omitted).

[3] *Daley v. Clark*, 282 Ga. App. 235, 238 (2) (638 SE2d 376) (2006) (punctuation and footnotes omitted).

Whether an individual is entitled to official immunity is a question of law.[4]

1. Dollar challenges the trial court's determination that Grammens was entitled to official immunity, arguing that the eye protection policy imposed upon the teacher a ministerial duty to require the students to wear eye protection while they were participating in or observing the experiment. The trial court granted Grammens summary judgment, reasoning:

> [A]s part of a course of instruction, Ms. Grammens exercised discretion in choosing to instruct her class through an experiment. While there was a policy in place which required her to provide eye protection to her students in particular situations, a certain degree of independent discretion was required of Ms. Grammens in applying the eye protection policy. A plain reading of the text of the eye protection policy shows that it was debatable whether the policy mandated the use of protective eyewear in this situation. Thus, discretion played an inherent role in Ms. Grammens's decision.

We agree with Dollar that the trial court erred.

The record supports the trial court's finding that Grammens exercised discretion in choosing to instruct her class through that particular experiment. Grammens deposed that, as a teacher, she was permitted to select teaching instructions outside the textbook to demonstrate various principles to be taught. She explained, "Depending on what topic it is I want to teach, I will go to the [text]book or to the Internet or wherever and look at the standard that I have to teach and then try and decide how the best way to share that knowledge with the students is." However, the basis of Dollar's negligence claim against Grammens was not her selection of this particular experiment to instruct her class; rather, it was the teacher's failure to provide David with and require him to wear eye protection after having made the discretionary decision to conduct that experiment as a teaching aid.[5]

The policy provided that students be required to wear eye protection "while participating in or observing" any course of instruction involving "explosive materials." The instructions for the experiment warned:

---

[4] *Conley v. Dawson*, 257 Ga. App. 665, 668 (2) (572 SE2d 34) (2002).

[5] See *Smith v. McDowell*, 292 Ga. App. 731, 733 (666 SE2d 94) (2008) (a court must distinguish between "rule making or deliberation" in a supervisory capacity and "a specific task which became necessary after the discretionary decision" was made); *Daley*, supra.

Flying bottle rockets is a lot of fun, but you must take safety precautions because it could be dangerous. . . . When pressuring the bottle, do not stand over it; the rockets leave the launch pad at over 100 mph. Count down before you pull the pin and stand back at least ten feet from the pad. . . . For the first flight, we recommend that you only pressurize to about 45 psi (pounds per square inch). After the first flight, we recommend that you do not go past 75 psi, otherwise you may risk *the possibility of the bottle exploding.*[6]

Grammens deposed that 25-30 students comprised each of her classes; that at the start of the school year, her classroom had been equipped with 30 pairs of safety goggles; that the goggles had been stored in the classroom throughout the school year; and that the goggles were available at the time of the experiment. She also deposed that she had known about the eye protection policy; that a copy of it had been added to the "policy notebook," which was kept either inside or just outside the principal's office; that the principal had provided the notebook to the teachers at the beginning of each school year; and that they were required to review it. Grammens further recalled that during at least two other activities that school year, she required her students to wear safety goggles.

To support her claim that she could not be held personally liable in this case, Grammens presented the affidavit of a mechanical engineer. He testified that the experiment "did not involve explosive materials or an explosion but rather was a controlled venting of pressure." He further testified that "according to the American Society of Mechanical Engineers, which is responsible for the drafting of the Pressure Vessel Code, a soft drink container, such as the one used in the experiment . . . does not meet the definition of a Pressure Vessel"; and that "[n]one of the materials that were utilized in the subject experiment, air pressure, water nor a soft drink container, are explosive because none of them expands with force and noise because of a rapid chemical change or decomposition."

We find no merit in Grammens's assertion that the engineer's affidavit showed either that the policy did not apply to the experiment or that determining whether the policy so applied was a discretionary function. Even if none of the experiment's components — individually — met the definition of an "explosive material" cited by the engineer or was "explosive" in that it could "expand[ ] with

---

[6] (Emphasis supplied.)

force and noise because of a rapid chemical change or decomposition," the undisputed fact remains that the instructions expressly warned of dangers created by combining the individual components. One such condition was pressurizing the bottle past a certain psi; the instructions explicitly stated that doing so could result in the bottle "exploding."[7] Thus, the engineer's testimony did not show that the eye protection policy was inapplicable to the experiment; did not show that determining whether the policy applied to the experiment was a discretionary function; and did not, by describing the experiment (apparently, when correctly conducted) as "a controlled venting of pressure," obliterate the express warning that the bottle could explode.

Within the context of conducting an experiment for middle school students, the plain language of the eye protection policy that required the use of eye protection when participating in or observing instruction concerning explosive materials, together with the plain language of the experiment's instructions, Grammens was required neither to exercise personal deliberation and judgment nor act in a way not specifically directed. These circumstances required merely the execution of specific, simple, absolute, and definite tasks: provide the students participating in or observing the experiment with eye protection and require them to wear it.[8]

We reject Grammens's argument that this issue is controlled to the contrary by a line of cases that held that the supervision of students was a discretionary function, the exercise of which entitled school officials to immunity. Citing numerous cases, Grammens asserts, "Because it is clear that [she] was supervising her students at the time of the subject incident, and the law is likewise clear that determinations regarding how a teacher can best supervise her students are discretionary, [she] is entitled to official immunity."

In *Smith v. McDowell*,[9] we reviewed recent decisions and indeed found that "a de facto absolute immunity for school employees ha[d] developed gradually across the last decade. Not one recent case exist[ed] in which the Georgia courts ha[d] found a ministerial duty on the part of a school employee."[10] After acknowledging that "other decisions of this court ha[d] stretched the concept of a discretionary act in school cases to its outermost limits,"[11] we determined that

---

[7] Notably, Grammens admitted that she was not measuring the amount of air she was pumping into the bottle.

[8] See *Smith*, supra at 732-736; *Heller v. City of Atlanta*, 290 Ga. App. 345, 348-349 (1) (659 SE2d 617) (2008).

[9] Supra.

[10] Id. at 734.

[11] Id.

those decisions were factually distinguishable from *Smith*, where the school policy plainly had provided for no discretion.[12] In this case, we have similarly determined that, under the circumstances presented, the eye protection policy plainly provided for no discretion on Grammens's part. Accordingly, the cases relied upon by Grammens are distinguishable on their facts.[13]

2. Dollar contends that the trial court erred by granting summary judgment to the principal, Sarver. He relies upon language within the policy that "[e]ach *school shall* provide eye protection equipment to every student"[14] to posit that the school board did not intend to hold only the teacher responsible for complying with and enforcing the policy.

The trial court granted Sarver summary judgment, reasoning:

> As a school principal, Ms. Sarver was charged with enforcing the policies and procedures of the local school board, yet it was left to her independent discretion to determine every aspect of the manner of this enforcement. Consequently, the duty imposed on Ms. Sarver was neither simple nor absolute and definite so as to render it ministerial. Every decision made in furtherance of this duty of enforcement, whether it involved action or non-action, was made squarely within the bounds of Ms. Sarver's discretion.

It is true that the policy's compulsory language cited by Dollar mandated that the school provide eye protection equipment to every student while he or she was engaging in certain activities. But a mandated action is not necessarily "the equivalent of a ministerial

---

[12] Id.

[13] See, e.g., *Harper v. Patterson*, 270 Ga. App. 437, 440 (2) (606 SE2d 887) (2004) (special education teacher was entitled to official immunity, where students/plaintiffs alleged that she had failed to supervise her classroom activities in such a manner so as to protect them from molestation by a paraprofessional employed to assist them); *Cooper v. Paulding County School Dist.*, 265 Ga. App. 844 (595 SE2d 671) (2004) (school principal was entitled to official immunity, where parents alleged that injuries to their family members were caused by the principal's negligent repair of a gate on the school property and principal had to exercise judgment as to how the school should handle the broken gate); *Perkins v. Morgan County School Dist.*, 222 Ga. App. 831, 835 (2) (476 SE2d 592) (1996) (where parents alleged that their child's murder had resulted from the school's early release of their child from school in violation of the school's policy that a student who was to be dismissed early had to be signed out "by the parents or authorized person," defendant school secretary was entitled to official immunity because the policy's language allowed for her interpretation as to who was an "authorized person"); *Wright v. Ashe*, 220 Ga. App. 91, 92-93 (469 SE2d 268) (1996) (where student left school campus early and thereafter was killed in automobile accident, parent's suit against teachers and principal for failing to implement school's policy of not allowing students to leave the school premises was barred by official immunity because implementation of that policy required defendants' discretion).

[14] (Emphasis supplied.)

act that deprives the actor of official immunity if done negligently."[15] "An official's action in fulfilling a . . . mandate may be discretionary when those actions involve the exercise of personal deliberation and judgment."[16]

We agree with the trial court that implementing the school's compliance with the policy called for the principal to exercise her personal deliberation and judgment. Nothing in the policy specified how the school would provide eye protection equipment to its students at the appropriate times. Rather, the principal made decisions leading to the availability of eye protection equipment to the teachers, in addition to advising the teachers about the eye protection policy, so that they in turn would distribute such equipment to their students at the required times. These circumstances demonstrated that the principal's actions were "not simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty that is the hallmark of a ministerial duty."[17] Thus, the trial court correctly ruled that the principal was entitled to summary judgment on the ground of official immunity.

3. Dollar contends that the trial court erred by granting summary judgment to Gault, arguing that the superintendent had a ministerial "duty to enforce the Eye Protection Policy because this is a rule passed by the Board of Education" pursuant to OCGA § 20-2-109.

We find no error in the trial court's ruling with respect to Gault. While the policy adopted set forth various mandates, neither the policy, regulation, nor the statute relied upon specified steps to be taken by the superintendent to enforce compliance with the policy. Dollar has failed to specify any act that Sarver should or should not have done as a ministerial duty. We conclude that the duty imposed upon the superintendent was not "simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty that is the hallmark of a ministerial duty."[18] Dollar has shown no error in the trial court's determination that, because the superintendent was required to exercise discretion to determine aspects of enforcing the eye protection policy adopted by the board, she was entitled to official immunity.

---

[15] *Murphy*, supra at 199.

[16] *Todd v. Brooks*, 292 Ga. App. 329, 331 (1) (665 SE2d 11) (2008) (footnote omitted).

[17] *Murphy*, supra (punctuation omitted).

[18] Id. (punctuation omitted).

*Judgment affirmed in part and reversed in part. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED NOVEMBER 26, 2008 —

*Kidd & Vaughan, James D. Blitch IV*, for appellants.
*Harben, Hartley & Hawkins, Phillip L. Hartley, Martha M. Pearson, Gray, Rust, St. Amand, Moffett & Brieske, Matthew G. Moffett, Wayne S. Melnick*, for appellees.