**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 16, 2014**

# In the Court of Appeals of Georgia

A14A0448. BUTLER v. DOE et al.

DILLARD, Judge.

Jane Doe, a minor, by and through her best friend and legal guardian, Mary Roe, filed suit against Kevin Butler, a teacher at Cass Middle School (the "School"), for personal injuries that Doe suffered when she was allegedly sexually assaulted by another student at the School as a result of Butler's alleged failure to properly supervise the students during an after-school activity.[1] Butler moved for summary judgment on the ground that his supervision of the students in question was a discretionary function that entitled him to official immunity. The trial court denied Butler's motion, holding that his alleged failure to supervise the students amounted

---

[1] Doe's complaint included claims against the Bartow County School District, the School's principal, and another School employee. The trial court granted summary judgment as to those defendants and Doe does not challenge that ruling.

to a ministerial function to which official immunity does not apply. Butler argues on appeal that the trial court erred in concluding that his acts were ministerial rather than discretionary. We agree.

Viewed in the light most favorable to Doe,[2] the record shows that in 2010, Butler was a teacher at the School and also served as a teacher advisor for the color guard. On the afternoon in question, the School had two after-school functions in the gymnasium—a color-guard presentation followed by a choral concert. Doe was participating in both functions.

Butler agreed to supervise and facilitate the color-guard presentation. To that end, he met the four participating color-guard students, including Doe, at a designated time and gathered them in the chorus room, a room directly adjacent to the gymnasium. The group left their personal belongings in the chorus room and Butler then escorted the students to a mobile classroom to retrieve their equipment. Butler thereafter watched the students perform their color-guard presentation and then helped them return their equipment to the mobile classroom.

---

[2] *See Martin v. Herrington Mill, LP*, 316 Ga. App. 696, 697 (730 SE2d 164) (2012) ("[A] de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (punctuation omitted)).

Afterwards, the color-guard group returned to the chorus room to gather their personal belongings. Butler was aware that Doe was performing in the choral concert immediately following the color-guard presentation and, shortly after the group entered the chorus room, Doe left and went to the restroom to change her clothing. There is a factual dispute as to whether the remaining three students stayed in the chorus room and/or whether Butler inquired as to whether those students intended to leave the School or attend the concert.[3] Regardless, Butler, who was not responsible for attending or supervising the subsequent choral concert, left the chorus room and entered the adjoining gymnasium. There, he joined a crowd of 150 to 200 teachers, students, and parents—including Doe's mother—to watch the first 15 to 20 minutes of the concert before he left the School.

---

[3] Butler testified definitively that he ascertained that the three remaining students planned to attend the concert. Doe asserts in her affidavit, however, that Butler "did not inquire as to whether any of the other students were being picked up or remaining at the school for the concert." We note that Doe is limited to swearing only to those facts that are within her own personal knowledge; consequently, she can aver only that she did not hear any such inquiry by Butler. *See* OCGA § 9-11-56 (e) ("Supporting and opposing affidavits shall be made on *personal* knowledge, shall set forth such facts as would be admissible in the evidence, and shall show affirmatively that the affiant is *competent* to testify to the matters stated therein.") (emphasis supplied). But even if we assume that Butler did not attempt to ascertain the students' plans, this in no way impacts our ultimate conclusion that his failure to do so was a discretionary act.

Doe alleges that she reentered the chorus room after returning from the restroom and, although the other three color-guard students were there when she initially entered, two eventually left and she was sexually assaulted by the third. She thereafter sued Butler, asserting that his act in leaving the students unsupervised in the chorus room following the color-guard performance resulted in her sexual assault. The trial court denied Butler summary judgment after concluding that he was not entitled to official immunity because he had "an absolute ministerial duty to protect" the color-guard students remaining in the chorus room and his total failure to supervise them constituted a breach of that ministerial duty. This appeal follows.

Georgia law is well established that the "monitoring, supervising, and controlling the activities of students is a *discretionary* action protected by the doctrine of official immunity."[4] Contrary to the holding of the trial court, this is true

---

[4] *Perkins v. Morgan Cnty. Sch. Dist.*, 222 Ga. App. 831, 835 (2) (476 SE2d 592) (1996) (emphasis supplied); *accord Leake v. Murphy*, 274 Ga. App. 219, 224 (2) (617 SE2d 575) (2005), overruled on other grounds by *Murphy v. Bajjani*, 282 Ga. 197 (647 SE2d 54) (2007); *see also Reece v. Turner*, 284 Ga. App. 282, 285 (1) (643 SE2d 814) (2007) ("The determination of whether an action is discretionary or ministerial depends on the character of the specific actions complained of, not the general nature of the job, and is to be made on a case-by-case basis." (punctuation omitted)); *Wright v. Ashe*, 220 Ga. App. 91, 94 (469 SE2d 268) (1996) ("[T]he general task imposed on teachers to monitor, supervise, and control students has . . . been held to be a discretionary action which is protected by the doctrine of official immunity.")

even if the allegations involve a teacher's *total failure* to supervise the students under his or her care.[5] Indeed, the complete failure to perform a discretionary act is "the same as the negligent performance of that act for the purposes of determining whether such action was discretionary or ministerial."[6]

There is simply no way to construe the evidence so as to conclude that Butler's alleged failure to supervise was anything other than a discretionary act. Indeed, as is readily apparent from the facts set forth *supra*, Butler was responsible for monitoring and ensuring the safety of the students while he shuttled them between numerous rooms in the school, aided them in getting their equipment and supplies, facilitated a successful color-guard presentation, and transitioned them from one after-school activity to another. Suffice it to say, the assessment of whether direct supervision and,

---

[5] *See Aliffi v. Liberty Cnty. School Dist.*, 259 Ga. App. 713, 715 (578 SE2d 146) (2003) (holding teacher was immune from suit alleging that she violated school policy by sending a child, totally unsupervised, to the storage garage); *Chamlee v. Henry Cnty. Bd. of Educ.*, 239 Ga. App. 183, 184 (1) (521 SE2d 78) (1999) (concluding that teacher's inadequate supervision of students during extracurricular activity was discretionary act entitling teacher to official immunity); *Kelly v. Lewis*, 221 Ga. App. 506, 508 (471 S.E.2d 583) (1996) (granting official immunity to teacher who failed to be present at the school's front door to ensure safe arrival of students).

[6] *Kelly*, 221 Ga. App. at 508.

5

if so, what degree of oversight was required to accomplish the foregoing tasks necessarily involved Butler's personal and professional judgment.

The dissent, like the trial court, nonetheless relies upon a purported School policy that Butler was required to ensure his students' attendance at after-school functions in support of its position that a genuine issue of material fact exists as to whether his failure to make certain that Doe reported to the choral concert constituted the breach of a ministerial duty.[7] This argument fails for two reasons. First, this contention fails because the undisputed record shows that any such duty, to the extent one existed, fell upon the chorus instructor, not Butler. But in any case, even if we accept the dissent's strained reading of the record and assume that Butler violated an established school policy, "[s]upervision of students is considered discretionary even where specific school policies designed to help control and monitor students have

---

[7] There is a conflict in the record as to whether attendance at after-school functions was mandatory. The School principal testified that students were not required to attend after-school functions, although Doe asserted that her attendance at the choral concert was indeed mandatory. The undisputed record, however, makes clear that the school had no written policies directing how teachers were to supervise their students at after-school functions. Instead, such decisions were left to the "good professional judgment" of the teachers. And to the extent the trial court and dissent rely on Butler's written job description requiring "prompt and regular attendance," the argument still fails for the reasons stated *infra*.

been violated."[8] It follows, then, that Butler is protected by the doctrine of official immunity and is entitled to summary judgment.

*Judgment reversed. Andrews, P. J., Ellington, P. J., Doyle, P. J., McMillian, J., concur. Phipps, C. J., and Miller, J. dissent.*

---

[8] *Chamlee.,* 239 Ga. App. at 184 (1); *see also Perkins*, 222 Ga. App. at 836 (2) (holding secretary's failure to enforce school's policy regarding early dismissal was discretionary act); *Wright*, 220 Ga. App. at 93-94 (holding teachers' failure to enforce school policy governing class attendance was discretionary act).

A14A0448. BUTLER v. DOE.

MILLER, Judge, dissenting.

I dissent from the majority's opinion because Kevin Butler has failed to establish that there are no genuine issues of material fact.

As the party moving for summary judgment, Butler bore the burden of demonstrating that he was entitled to official immunity by showing that the specific acts he performed were discretionary. See *Howell v. Willis*, 317 Ga. App. 199, 203 (729 SE2d 643) (2012). Consequently, although the question of whether a governmental employee is entitled to official immunity is a question of law that must ultimately be decided by the trial court, where the relevant facts are in dispute, the trial court cannot resolve the factual issues on a motion for summary judgment.

*Nichols v. Prather*, 286 Ga. App. 889, 896 (4) (650 SE2d 380) (2007). Instead, a jury must resolve the conflicting facts. Id.

Here, Doe alleged that Butler was negligent for leaving her and another student alone in the locked chorus room. In support of her claim that Butler was required to ensure her attendance at the concert, Doe submitted Butler's job description indicating that he had a duty to maintain prompt and regular attendance. Although Butler presented evidence that attendance taking at after-school events was not mandatory, Doe averred that her attendance was mandatory and that attendance was taken. Moreover, Butler deposed that, as a teacher advisor for the color guard, he had a responsibility to make certain that the participating students either had a ride home following the group's performance or stayed for the concert. Doe presented evidence that Butler did not ask the students about their plans. Instead, Butler left the students alone in the locked chorus room and went to the concert, whereupon Doe was sexually assaulted by another student.

The evidence does not show as a matter of law that the acts of ensuring that the students had a ride home or were going to attend the concert required Butler to exercise personal judgment, examine facts, reach reasoned conclusions, or act in a way not specifically directed. Instead, making sure that students are either picked up

2

following an after-school activity, or attend a subsequent after-school activity, such as the choral concert in this case, is a simple, absolute, and definite action. See *McDowell v. Smith*, 285 Ga. 592, 593-594 (678 SE2d 922) (2009). In light of this evidence, there is a question of fact regarding Butler's duties following the color guard performance that precludes the grant of summary judgment. See *Dalton v. City of Marietta*, 280 Ga. App. 202, 203 (633 SE2d 552) (2006) ("Even slight evidence will be sufficient to satisfy the plaintiff's burden of production of some evidence on a motion for summary judgment; such evidence may include favorable inferences drawn by the court from the evidence presented.") (citation and punctuation omitted).

Teachers and school employees have an important responsibility to protect our children, and it is unwise to advance the "de facto absolute immunity for school employees" that has developed in our case law where questions of fact remain. See *McDowell*, supra, 285 Ga. at 594 (noting only one recent case in which this Court has held that a school employee's actions were ministerial). Providing such absolute immunity to school employees

> abrogates the constitutional right of citizens to seek redress for injuries inflicted by the ministerial acts of school employees, especially upon young children who are not capable of caring for themselves or exercising judgment. If Georgia school employees are to be clothed with absolute immunity under any and all circumstances, that is a decision to

3

be made by the Georgia General Assembly; it is not the function of this, or any, court.

*Smith v. McDowell*, 292 Ga. App. 731, 737 (666 SE2d 94) (2008). Since Butler has not shown that the undisputed evidence established that his actions were discretionary, he has failed to establish that he was entitled to official immunity. Accordingly, I would affirm the trial court's denial of Butler's motion for summary judgment.

I am authorized to state that Chief Judge Phipps joins in this dissent.